TOBIAS NIXDORFF, APPELLANT, v. LEWIS SMITH, APPELLEE.

A decree of a perpetual injunction on suits instituted on the common law side of the
    Circuit Court of the District of Columbia, reversed, and the bill dismissed; the ac-
    counts between the parties having been erroneously adjusted in the Circuit Court.

ON appeal from the Circuit Court of the United States, for the District of Columbia, for the county of Washington.

This case was argued by Mr. Key, for the appellant; and by Mr. Coxe, for the appellee.

Mr. Justice M'KINLEY delivered the opinion of the Court.

This is an appeal to this Court, from the Circuit Court of the District of Columbia, for the county of Washington, sitting in Chancery.

Smith, the appellee, filed a bill in Chancery against Nixdorff, stating that he had purchased of Nixdorff all his right and interest in the stock in trade, and commercial business, then carried on in the city of Baltimore, by Nixdorff and Hager; and agreed to pay to Nixdorff, in hand, the sum of five thousand dollars, and at the expiration of two years, thereafter, such further sum as would be sufficient to reimburse to Nixdorff the balance of his interest, for investment of capital and interest thereon, after deducting the payment of the five thousand dollars. And in contemplation of the agreement, and after the terms had been fully settled among the parties, but before it was written, Smith entered into partnership with Hager, and agreed with him to continue the same business, under the name and firm of Hager and Smith. And in anticipation of the new partnership, it was agreed that the firm of Hager and Smith should assume the whole of the debts of Nixdorff and Hager, and provide for their payment; and that all the debts owing to Nixdorff and Hager should be collected by Hager and Smith: and it was further agreed that Smith should sustain no loss by the collection of the debts due to Nixdorff and Hager.

It is further charged, that Nixdorff's half of the goods, in the store of Nixdorff and Hager, was sold to Smith, at twelve and a half per cent. discount on the cost price; that an inventory was

[Nixdorff *v.* Smith.]

taken of the goods, and, after making the stipulated deduction, Nixdorff's half amounted to five thousand nine hundred and seventy-five dollars, and thirty-two cents. The agreement, dated the ninth day of August, 1833, and signed by the parties, was made part of the bill. It is there charged, that the amount of debts paid by Hager and Smith for Nixdorff and Hager, including interest to the first of November, 1837, was forty-five thousand nine hundred and ninety-two dollars, and fifty-two cents; and the amount collected for them, with interest, to the same period, amounted to thirty-nine thousand six hundred and eleven dollars and nine cents; showing a balance against Nixdorff and Hager of six thousand three hundred and eighty-one dollars and forty-three cents.

It is further stated in the bill, that the firm of Hager and Smith afterwards purchased of Nixdorff, who was then doing business on his own account, goods and merchandise to the amount of four thousand five hundred dollars, for which they gave their promissory notes; that Hager and Smith afterwards failed in business, and Hager removed to the western country, leaving Smith to pay the debts of the firm; that Nixdorff has brought suit against him, on the common law side of the Court, upon the promissory notes; and refuses to permit him to set off the above balance of accounts in that suit. He, therefore, prayed that Nixdorff might be enjoined from proceeding further at law; and that by decree of the Court this equitable off-set should be allowed. The prayer for the injunction was granted.

Nixdorff, in his answer, denied that any balance was due from Nixdorff and Hager to Hager and Smith; and he also denied that he had ever refused to go into a settlement of the accounts between the two firms.

By order of the Court below, the accounts between the parties, as set up in the bill and answer, were referred to an auditor, with many special instructions. By his report it appears, that the amount of debts collected by Hager and Smith for Nixdorff and Hager, under the contract between the parties, amounted to forty-two thousand and twenty-six dollars, including interest, to which he added the amount of goods contained in the inventory, after deducting twelve and a half per cent. from Nixdorff's half, making in all fifty-four thousand eight hundred and thirty dollars

and twenty-six cents, to the credit of Nixdorff and Hager; and he charged them with debts paid under the contract, including interest, the sum of forty-five thousand nine hundred and ninety-two dollars and fifty-two cents; to which he added the sum of five thousand dollars paid by Smith to Nixdorff, making in all the amount of debits fifty thousand nine hundred and ninety-two dollars, and fifty-two cents; showing a balance in favour of Nixdorff and Hager, of three thousand eight hundred and thirty-seven dollars and seventy-four cents.

To this report the complainant filed the following exception. "The auditor has erred in this, that he has charged the complainant with the amount of the whole inventory of the goods of Nixdorff and Hager. Whereas the complainant was purchaser of one-half of the goods only, and should have been charged with no more; the other half being the private property of Hager, and as such brought into the capital stock of Hager and Smith." The Court sustained this exception, and directed the auditor to restate the accounts between the parties.

In the reformed report the auditor charges Nixdorff with forty-five thousand nine hundred and ninety-two dollars and fifty-two cents, for debts paid by Hager and Smith for Nixdorff and Hager, and adds the five thousand dollars paid by Smith to Nixdorff; making Nixdorff's debt to Hager and Smith fifty thousand nine hundred and ninety-two dollars and fifty-two cents; and he credits Nixdorff by forty thousand three hundred and seventy-six dollars and sixty cents, for debts collected for Nixdorff and Hager, to which he added five thousand nine hundred and seventy-five dollars and thirty-two cents, for Nixdorff's half of the goods; making the whole amount of credits forty-six thousand three hundred and fifty-one dollars and ninety-two cents; leaving a balance due from Nixdorff and Hager to Hager and Smith of four thousand six hundred and forty dollars and sixty cents. The amount of the debt due from Hager and Smith to Nixdorff, for which Smith was sued, being four thousand eight hundred and seventy-four dollars and forty-five cents, the auditor deducted the balance found due from Nixdorff and Hager, from that sum, and reports a balance finally due to Nixdorff of two hundred and thirty-three dollars and eighty-five cents; and excludes Hager's half of the goods, included in the inventory, entirely

from the account; on the ground that they were not subject to the debts of Nixdorff and Hager.

To this part of the report the defendant excepted. But the Court overruled the exception, confirmed the reformed report of the auditor, and decreed that the injunction should be made perpetual; except for the sum of two hundred and thirty-three dollars and eighty-five cents, as reported by the auditor.

A very brief examination of the case will test the correctness of this decree. The equity, set up in the complainant's bill, rests entirely on the assumption that, upon a full and fair settlement of accounts, under the contract referred to, a large balance would be found against Nixdorff; and upon the apparent establishment of this fact, is the decree founded. If, however, it be shown that, instead of Nixdorff being indebted to Hager and Smith, on such settlement, they are largely indebted to him, the bill will be without equity, and the decree of course erroneous. By bringing into the accounts all the effects of Nixdorff and Hager, the auditor's first report shows, very satisfactorily, a considerable balance in favour of Nixdorff.

But the complainant's counsel seems to have taken up the idea, that the five thousand dollars paid by Smith to Nixdorff applied ex lusively to the payment of Nixdorff's half of the goods; and that the legal effect of the payment was, to release Hager's half of the goods from liability to the debts of Nixdorff and Hager: and this principle was recognised by the auditor in his reformed report, and by the Court in their decree; notwithstanding the allegations in the complainant's bill, and the stipulations of the contract, show clearly, that the five thousand dollars were paid upon the purchase of the whole of Nixdorff's interest. Whether the payment was special or general, is not material to the merits of the case; but it is very material in considering the effect ascribed to it in the Court below. For, if the payment had the power to release Hager's part of the goods from liability, because Nixdorff had sold to Smith his part of them, and received part of the purchase-money, it must necessarily have the same effect, if it applied to the sale and purchase of the whole of Nixdorff's interest. The fact being that Nixdorff did sell the whole of his interest to Smith, and received the five thousand dollars in part payment of the whole; to carry out the principle assumed, the

whole of Hager's interest in the firm of Nixdorff and Hager was thereby discharged from liability to the payment of their debts; and the burden of paying them devolved upon Nixdorff. A course of reasoning leading to conclusions so much at variance with law and justice, is answered by merely stating it.

This singular error originated in charging Nixdorff with the five thousand dollars paid by Smith, on account of the whole purchase; and then refusing to charge Hager and Smith with the whole amount of the partnership effects in their hands, originally belonging to Nixdorff and Hager. The very moment that Nixdorff was charged with this sum of five thousand dollars, the payment of it by Smith was neutralized, and the transaction between the parties stood as though no payment had been made. The only consideration left, therefore, to support the sale by Nixdorff to Smith, was the undertaking of Hager and Smith, in the written contract, to pay the debts of Nixdorff and Hager. In this aspect of the case, the liability of all their effects in the hands of the former, to the payment of the debts of the latter, cannot be doubted. By the first report of the auditor it appears that he settled the accounts between the parties, upon the principles here suggested; that is, by charging Hager and Smith with the whole inventory of the goods, and the money collected for Nixdorff and Hager, and by charging Nixdorff with the money paid by Hager and Smith, in discharge of the debts of Nixdorff and Hager, and also with the five thousand dollars paid to him by Smith. And upon this statement of the accounts, as already shown, a considerable balance appears in favour of Nixdorff and Hager.

But the auditor afterwards, it appears, became a convert to the doctrine of the complainant's counsel; and, in his reformed report, excluded Hager's part of the goods from the settlement altogether; and thereby created a seeming balance in favour of Hager and Smith, to nearly the amount of their debt to Nixdorff, on which the suit at law was brought. This statement of the accounts by the auditor in his first report, as far as it has been here examined, is perfectly correct; and ought to have been confirmed by the Court. The equity, set up in the bill, depending entirely on the truth of the allegation, that the balance would be in favour of Hager and Smith, upon such settlement of the ac-

[Nixdorff *v.* Smith.]

counts; the balance being clearly established against them, and in favour of Nixdorff, extinguishes, therefore, all pretence to any equitable set-off in favour of Smith.   The decree of the Circuit Court is, therefore, reversed, the injunction dissolved, and the bill dismissed.