THE ERIE RAILWAY COMPANY, Respondent, *v.* JOSEPH H. RAMSEY, Appellant.

The proceeding to punish for a contempt is a special proceeding, and falls within subdivision 3 of section 11 of the Code, and the order made is a final order in a special proceeding affecting a substantial right.   Such an order is reviewable in this court.   It is proper to entitle the papers as in the original action.

However hastily or improvidently an injunction may be granted, it is not void; it is valid until it shall be annulled by the court granting it, or reversed on appeal, and until such time it is entitled to obedience.   If it is disobeyed, the party can be punished for contempt.

A court of equity has power, by injunction, to restrain proceedings in another equitable action in the same court, and the Supreme Court, in one judicial district in this State, has jurisdiction in an action brought for that purpose, to restrain, by injunction, proceedings in another action pending in that court, in another district.   This jurisdiction should not be exercised except in extreme cases.

An equitable action was commenced in the Supreme Court; while it was pending an injunction order was granted by that court in another district in an action brought for that purpose, restraining proceedings in the first action,—*Held*, that it was not void, but must be obeyed until set aside.

(Argued April 4th; decided June 6th, 1871.)

APPEAL from the order of the General Term of the Supreme Court, in the first judicial district, dismissing defend-

ant's appeal from the order adjudging plaintiff in contempt, and ordering a reference, and modifying another order appealed from fining the defendant for such contempt, by reducing the amount of a fine from $5,325 to $260.

` This action was brought for the purpose of restraining the defendant Ramsey from further prosecuting a suit commenced by him against the Erie Railway Company, Jay Gould, James Fisk, Jr., *et al.*, in the Supreme Court in the sixth district. A temporary injunction was procured from Judge BARNARD, on the 25th of November, 1869, restraining defendant Ramsey, his agents, etc., "from proceeding any further in the action wherein Joseph H. Ramsey is plaintiff, and the Erie Railway Company, Jay Gould and others are defendants, and from commencing or permitting to be commenced, any other action of a similar nature against the Erie Railway Company."

This injunction order was served upon Mr. Ramsey on the 26th day of November, 1869. On the 17th day of December, 1869, the motion papers in this proceeding were served upon Mr. Ramsey, together with an order to show cause before Judge BARNARD, on the 20th December, why he should not be punished for a contempt in violating the injunction herein, "by proceeding further in the action brought by said Ramsey against the Erie Railway Company and others," or for other relief.

The papers upon which said order was founded consisted of,

*First.* The summons, complaint, affidavits and injunction order in this action. The allegations of this complaint are sufficiently stated in the opinion.

*Second.* An affidavit proving service of such papers on Mr. Ramsey on the 26th of November, 1869.

*Third.* An affidavit of Dudley Field, showing that he was served, on the 4th December, 1869, with the printed papers attached to his affidavit (Exhibit A), by a person who stated that he represented one of the plaintiff's attorneys in *Ramsey* v. *Gould et al.*

*Fourth.* The printed papers above alluded to (Exhibit A), being copies affidavits in *Ramsey* v. *Gould et al.*, showing

efforts to serve Gould *et al.*, and a failure to effect such service, an order for a substituted service on Gould and Lane, two of the defendants, and an order to show cause, granted at a Special Term of the Supreme Court at Delhi, on the 2d December, why the several orders of suspension and injunction, theretofore granted by the court, should not be continued.

These were all the papers upon which the order to show cause why Mr. Ramsey should not be punished as for a contempt was founded.

On the service of such order, at Delhi, an affidavit was also served upon Mr. Ramsey, showing that he was present, and sitting beside his counsel, when a motion was made in his behalf, at Delhi, on the 17th of December, to vacate the stay of proceedings granted by Mr. Justice Balcom, and to continue and confirm the original orders of suspension and injunction, and a receiver granted in his suit against Gould and Fisk on the 23d of November, 1869.

The motion or order to show cause, after several postponements, finally came on to be heard in February, 1870, when, in opposition to the same, an affidavit of Mr. Ramsey was read, in which his purpose in bringing his action against the Erie Railway Company, Jay Gould *et al.*, was stated to have been to procure the suspension and removal of defendants, Gould *et al.*, from their position as directors of the Erie Railway Company, and for an accounting by them to the company for several millions of money alleged to have been squandered and misappropriated by the defendants, the money belonging to the Erie Railway Company.

The affidavit further showed that the sworn complaint in that action, and several affidavits, were presented to the Special Term of the Supreme Court in the sixth district, and after an examination of the same by the court, the orders of suspension and injunction were duly granted. The affidavit also showed that plaintiff was in communication with parties representing millions of the capital stock and bonds of the company, and that he had received from them assurances of co-operation and support in his attempt to bring Gould, Fisk

*et al.* to an accounting and a removal from their office. It was also stated in the affidavit, that although Ramsey was enjoined in this action from taking any further steps in his suit against Gould *et al.*, they were under no such injunction, but could go on and take such proceeding as they might be advised therein, while he was prohibited from any proceeding in the action.

It was also stated, that immediately after the injunction order was served upon Mr. Ramsey in this action, he had a consultation with his counsel in regard to what course he should pursue ; that, after an examination of the law, his counsel unani- mously advised him that, in their opinion, the injunction order in this action was void, that the court had no jurisdic- tion to stay his proceedings in another action in the same court, and that the injunction might be disregarded ; that he was informed by his counsel that the Supreme Court, at Gen- eral Term, in the first district, Judge Barnard forming part of the court, had decided such an injunction to be void, and that it might be disregarded ; that he was subsequently informed that, when the motion to continue the injunction in this action came on for argument before Judge Barnard, he had said that it was granted in the first instance upon the allegations in the complaint of a fraudulent appearance by attorney for the Erie Railway Company, in the suit against that company and Gould *et al.*, which alleged fraudulent appearance was fully explained on such argument; that in doing what he had done since the injunction order was served upon him, he had acted under the advice of his counsel, fully believing he had the right so to do, and that he had been guilty of no intentional disrespect to the court, or any mem- ber thereof, and of no intentional contempt of the court or its orders.

An affidavit was also read of one of Mr. Ramsey's attor- neys, showing that, since the plaintiffs in this action had pro- cured their injunction, they had themselves gone on in the other case, and taken steps to have Mr. Ramsey's complaint dismissed.

The judge, upon the conclusion of the argument, granted an order adjudging Mr. Ramsey in contempt for a violation of the injunction order in this action, and referred it to a referee to ascertain the damages that plaintiffs had sustained by reason of such violation of the injunction. From that order Mr. Ramsey appealed to the General Term of the Supreme Court.

Under the order thus appealed from proceedings were continued before Willard Bartlett, the referee named in the order, and testimony was taken before him from time to time, and he reported to the court that the Erie Railway Company had sustained damage, by the defendant Ramsey's violation of the injunction order, to the amount of $5,325, and the expenses of the referee.

Upon that report, the court, at Special Term, BARNARD, J., made an order again adjudging Mr. Ramsey in contempt, and fining him $5,325, together with $500, the costs and expenses of this proceeding, and committing him to the common jail of New York county until such fine and costs were paid. This order follows the referee's report. From that order, an appeal was also taken to the General Term.

Upon the hearing of the reference before the referee, it appeared that the injunction in this action was procured on the 25th November, 1869.

On the second of December, 1869, the attorneys for the defendants Gould, Fisk and The Erie Railway Company, in the case of Ramsey against them and others, procured from Judge Clerke a stay of proceedings in that case under the order appointing a receiver of the company upon a notice of motion to vacate that order returnable on the 14th of December.

The papers served on the defendant's attorneys in *Ramsey* v. *Erie*, on December 4th, 1869, were affidavits, and an order to show cause, and an order for a substituted service of the summons, complaint, injunction orders, etc., on Gould & Lane, ordering defendants to show cause December 10th, at

Delhi, why the several orders granted by the court in *Ram-sey* v. *Erie*, the 23d November, suspending the defendants, and enjoining them from acting, should not continue and remain in full force.

Evidence was admitted upon this reference, under objection, of the value of services performed by the counsel for The Erie Railway Company, subsequent to the granting of the order to show cause why Ramsey should not be punished for a contempt.

By far the greater portion of the damage reported by the referee was alleged to have been awarded for such services. The testimony taken was submitted to the court at Special Term for its information, and the order made from which an appeal was taken to the General Term of the Supreme Court.

The General Term, after argument, dismissed defendants' appeal from the first order adjudging him in contempt and ordering a reference, and modified the other order appealed from by reducing the amount of the fine from $5,325 to $260, and affirmed the order in other respects. From both the orders of General Term, defendant now appeals to this court.

*Lyman Tremain* and *R. W. Peckham, Jr.*, for the appellant. On the question of the right to appeal from the orders, *Sudlow* v. *Knox* (7 Abb. N. S., 411) ; Code, § 11 ; *People* v. *N. Y. C. R. R. Co.* (29 N. Y., 418). The injunction order was void. (Hilliard on Injunctions, 250, 255 ; *Minturn* v. *Trust Co.*, 3 N. Y., 498 ; *Dyckman* v. *Kernochan*, 2 Paige, 26 ; Clark's Ch., 307, 310 ; 1 Hoff. Ch. Pr., 89 ; *Dederick* v. *Hoysradt*, 4 How., 350 ; *Hurst* v. *Trust Co.*, 8 How., 416 ; *Foot* v. *Sprague*, 12 How., 355 ; *Arndt* v. *Williams*, 16 How., 244 ; *Harmon* v. *Remsen*, 23 How., 174 ; *Winfield* v. *Bacon*, 24 Barb., 154 ; *Van Vleck* v. *Clark*, 38 Barb., 316 ; *Grant* v. *Laick*, 5 Sandf., 612 ; *Schell* v. *Erie R. R. Co.*, 51 Barb., 368 ; *Smith* v. *Trust Co.*, Clark's Ch., 307 ; *Lane* v *Clark*, Clark's Ch., 309, 310.)

*David Dudley Field* and *A. J. Parker*, for respondent, cited 1 Duer., 451, 512; 9 N. Y., 263; *People* v. *Sturtevant* (9 N. Y., 279); *Bandon* v. *Beecher* (3 Clark & Fin., 479); *Manaton* v. *Molesworth* (1 Eden., 25); *Ogilvie* v. *Herne* (13 Vesey, 563); *Archer* v. *Slater* (10 Sim., 624); *Atwood* v. *Banks* (2 Beav., 192); *Boulter* v. *Boulter* (2 Beav., 196*n*); *Warrington* v. *Wheatstone* (Jacob, 202); *Sieveking* v. *Behrens* (2 Myl. & Cr., 581); *Archer* v. *Slater* (10 Sim., 625); *Ins. Co.* v. *Thomas* (Law Rep. 3 Ch. App. 74).

FOLGER, J.   The defendant, by an order of the Special Term, dated 15th February, 1870, was adjudged guilty of a contempt of court, and a reference was ordered to ascertain and report the plaintiff's damages thereby sustained.   His appeal therefrom to the General Term was by an order dated 1st November, 1870, dismissed.   The Special Term, by an order dated 25th May, 1870, again adjudged him guilty of the misconduct alleged, determined the plaintiff's damages at $5,325, imposed a fine upon the defendant to that amount, and ordered that he be committed to the common jail until that fine and the costs and expenses of the proceedings be paid.   On appeal from that order the General Term, by order dated 1st November, 1870, modified the order of the Special Term so as to reduce the fine, etc., to $260, and in other respects affirmed the order.   From these orders of the General Term the defendant appeals to this court.

The case of *Sudlow* v. *Knox*, decided in this court in 1869 (7 Abbott N. S., 411), is a sufficient authority that an appeal lies to this court from these orders.   It was there held that though the papers were entitled, as they are now, in the original action, still the proceeding to punish for contempt was a special proceeding, and fell within subdivision 3 of section 11 of the Code of Procedure, and that the order made was a final order in a special proceeding affecting a substantial right, and was such an order as is reviewable by this court.   The case cited was an appeal from the final order imposing the fine.   But the prior order adjudging the party

in contempt was also before the court, was questioned in the argument, and was reviewed and passed upon by the court. (See pages 415–417.)

In that case, the court examined and passed upon the question whether the mulcted party, on the facts presented, was as a matter of law in contempt.

So here, the question is, upon the facts presented, was the defendant guilty of a contempt?

It is not urged but that he did in fact, at least technically, disregard the order of injunction; and thus the consideration of the case is narrowed to the inquiry, did the learned justice who granted that order have *jurisdiction?* Had he the power to sit in judgment upon the facts presented to him by the verified complaint in this action and the affidavits accompanying it, and to adjudge whether they brought before him a case demanding the interposition of the provisional remedy of an injunction order? It must be borne in mind that it matters not whether he adjudged erroneously as to the necessity or propriety of his interposition, or whether the facts were weak or insufficient. If the allegations contained in the papers before him tended to make a case, which existing he had the power to enjoin, then he had the power to sit in judgment upon them, and to adjudge and determine as to their strength or their weakness; the power to decide upon the facts thus presented, whether, as a matter of equitable expediency, there ought or ought not an order of injunction to issue. For this is not a review of the propriety of an order of injunction, nor are we to decide whether such an order has been hastily, improvidently or wickedly granted. If the facts before him tended to make a case, which made, jurisdiction was conferred to grant an order or to refrain from granting one, then, when he decided to grant it, it was not void. It was valid, though it should on appeal be held irregular or improvident. It was entitled to obedience, and disobedience was contempt. (*The People* v. *Sturtevant,* 9 N. Y., 266.)

This court has held, in *Fellows* v. *Heermans*, decided in December, 1870, that, by the Code of Procedure, the writ of injunction was abolished, that an order of injunction was substituted; that as a process in the action, and as a provisional remedy, such order must find its warrant in that statute, or it cannot stand. We are to look, then, to the Code, and to that alone, for the authority to sustain jurisdiction upon the particular facts presented in this case. If no authority is found there, then there was no jurisdiction. Section 219 of the Code, so far as it is here applicable, provides that, where it shall appear, by the complaint, that the plaintiff is entitled to the relief demanded, and such relief or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, would produce injury to the plaintiff; a temporary injunction may be granted to restrain such act. There can be no doubt but that the complaint states facts, which tended to show that acts had been, and were about to be, committed and continued, which would produce injury to the plaintiff. These acts, according to the allegations, were not merely the regular and orderly incidents of an action to enforce rights. But they were acts charged to be fraudulent; they were acts charged to be of fraudulent collusion between the attorneys of the plaintiff and an attorney assuming without authority to appear, and appearing in the action for the defendant therein, and about, fraudulently and by collusion, to consent, by hasty stipulation, that one also charged to be colluding, be appointed receiver of the vast property of the defendant. It was these acts, according to the complaint, these fraudulent and collusive acts, which would produce great and irreparable injury. And the allegations of the complaint sufficiently show that the injury would have been such. The relief demanded was in part, that this attorney and this inchoate receiver, might be restrained. *Prima facie*, these allegations being taken as true, the Erie Railway Company was entitled to that relief. The litigation

which the commencement of the action instituted, was to declare void these fraudulent and collusive proceedings.

The provisional remedy of a temporary injunction order was asked for and granted during the litigation which was to determine the truth or falsity of the allegations. Into their truth or falsity, we have no power to inquire. As to the regularity or irregularity of the pleading or any of the papers, whether the injunction order was erroneous or not, we may not decide. It does appear, however, on the papers presented, that the learned justice had the right to judge between the parties and upon the subject. There was that in them which gave him jurisdiction. There was that in them which tended to show a case within the provisions of the 219th section of the Code. This being so, the injunction order was valid, and should have been obeyed. It is conceded that Mr. Ramsey did not obey it, to the letter at least. He was, therefore, guilty of, at the least, a technical contempt.

In the elaborate points submitted to us by the learned counsel for the appellant, nothing is suggested contrary to this view. But the material point urged and most relied upon, is that a court cannot allow an injunction order in an action brought to restrain the prosecution of another action in the same court. This is probably the serious question in this case, and it is fairly presented for decision.

The papers upon which the injunction order was granted, showed, pending against the plaintiff named in them, an action on the equity side of the court, of which the learned justice was a member.

The complaint presented to him, prayed that the plaintiff in the action thus pending, and his attorneys, be restrained by injunction from proceeding any further in it; that another person be restrained from acting as receiver, and that the attorney who had appeared for the defendant therein, be restrained from acting as such without express authority from it. An injunction order to that effect was granted by him, as judge of the court, at chambers. But as the Code (section 218), provides that such order, " when made by a judge, may

be enforced as the order of the court;" it was, substantially, the order of the court. And as the court is, though so many judges, but one tribunal, it did thereby, in an action freshly instituted before it, enjoin proceedings in another action then pending in it, and restrain the action of a party whose complaint it had but lately entertained and acted upon. So that the question raised is, may a court of equity, in such a case, restrain the party to an action pending in it, from proceeding with his suit?

No ground of the jurisdiction of a court of equity is better established than that upon which it stands, when it restrains proceedings in a court of law. Where a party plaintiff is making use of the jurisdiction at law contrary to equity and good conscience, and where a party defendant has a good defence to an action at law, which, by mistake, accident or fraud of the other party, he is prevented from making, equity will interpose and make the defence available, and the remedy effectual by injunction. (Willard Eq. Juris., 347.)

In this State, since the adoption of the system of practice now existing, the equitable jurisdiction of a court to restrain proceedings at law in another court can be but seldom invoked. For there are but few courts, and they inferior, which have only a common law jurisdiction. The courts of original jurisdiction are mostly possessed of both equitable and common-law powers, and they are moreover mostly of co-ordinate jurisdiction. So that it may have been well held that one court of equitable jurisdiction may not, as a usual procedure, restrain the proceedings in another court of equal powers. For one, as much as the other, has in most cases the means of doing exact justice to all the suitors before it, and may, as well as the other, afford to the suitor any remedy equitable or legal to which he is entitled, and in any proceeding consistent with its established rules and practice, though it would be too much to say that, in no case, can a court restrain the suitors in another court of co-ordinate powers. Thus the jurisdiction of a court of equity to interfere to prevent a multiplicity of suits, or to draw to one

action cognate questions and interests sought to be litigated in many actions, is well established. But is it to be held that the exercise of this jurisdiction is thwarted when the numerous suits are divided among several courts of co-ordinate law and equity powers? The suit to bring to one judgment all the actions must be in one of the courts, and to make that suit effectual to the end sought, the power must be in that court to enjoin the parties to the suits in the co-ordinate courts from proceeding therein. An instance of the exercise of one branch of this power, sanctioned by this court, is found in the case of *N. Y. and N. Hav. R. R. Co.* v. *Schuyler* (17 N. Y., 592). Nor is it without other precedent, that a court of equity, by action instituted before it, may question the proceedings in another court of equity. Thus one court of equity has overhauled the decree of another court of equity for fraud, contrivance or covin in the obtaining of it. (*Bandon* v. *Beecher,* 3 Clark & Fin., 479; *Manaton* v. *Molesworth,* 1 Eden., 25.)

If it may entertain an action for that purpose, in which its decree, if favorable to the moving party, will have the effect to forever restrain the execution of the decree, the validity of which is brought in question; why may it not, pending the suit before it, restrain by temporary injunction the execution and enforcement of that decree? If it may thus restrain the proceedings in another court of equity to enforce the decree of that court, may it not restrain the proceedings in that court to obtain the decree? We speak of it not as a power usually to be exercised, but as one not beyond the jurisdiction of the court. The affirmative answer to this query is found in the fact that it has done so. (*Jackson* v. *Leaf,* 1 Jac. & W., 229–232; *Clarke* v. *Ormonde,* Jacobs, 546; *Earl of Newberry* v. *Wren,* 1 Vern., 220, and notes; 1st Am. fr. 3d Lond. ed.; *Vendall* v. *Harvey,* Nelson, 19–21; *Joanes* v. *Whitney,* Carey, 161; *Booth* v. *Leycester,* 3 Myl. & Cr., 459; *Beckford* v. *Kemble,* 1 Sim. & Stu., 7; *Crawford* v. *Fisher,* 10 Sim., 479; *Schuyler* v. *Pellissier,* 3 Edw. Ch., 191, 192; *Beauchamp* v. *Huntley,* Jacob, 546.)

But this ground of equitable jurisdiction, viz., that to restrain proceedings in a court at law, is not removed when the same court is clothed with powers both at law and in equity. Granted, that since the conjunction in this State of law and equity powers in nearly all courts of original jurisdiction, one court may not, as a usual thing, interfere with the proceedings in another court co-ordinate in power. Yet the jurisdiction to restrain proceedings at law remains.

A court, upon its equity side, may enjoin its own suitors' proceeding upon its law side. This jurisdiction is preserved and may be exercised. The only question can be, as to the method in which it shall be done. Is the method this alone, that in the action on the law side of the court, the facts be set up by answer, and affirmative equitable relief being prayed for upon them, the action be transformed into an equitable one, and thus there be, though not formally, yet practically, an injunction upon the party plaintiff from enforcing his strict legal right, until there shall be a determination of the claim of the party defendants for equitable relief? In a case in which all parties and all interests necessary to a full and complete determination of the controversy, were or could be brought before the court in the original action in a proper attitude to each other, there could be had such a determination. (Code, § 274, sub. 2 ; *Dobson* v. *Pearce*, 12 N. Y., 156 ; *Despard* v. *Walbridge*, 15 N. Y., 374; *Chase* v. *Peck*, 21 N. Y., 581.)

But this is not always practicable. If it be said, as is said, that a court cannot restrain itself, the answer is that a court of equity never sought or claimed to restrain a court at law, but did enjoin the suitors in it. (Willard Eq. Juris., 347; Story Eq. Juris., §§ 875–899.)

If it be said that the court can act upon its suitors by way of restraint in the very action which they are then prosecuting before it, one answer is that all the persons to be restrained and affected by injunction, temporary and perpetual, may not be parties to that action, and so not in the power of the court. (Story Eq. Juris., § 891*b*.) And another answer is, that a

party defendant may sometimes, for immediate or full remedy, need relief against as well a co-defendant in the original action as the plaintiff therein (1 Beav., 171), and that he cannot always have relief against the co-defendant, based upon the allegations of new matter in his own answer, inasmuch as the co-defendant may not in that action have opportunity of taking and contesting an issue upon those allegations, and the transaction out of which the equity arises may be of too complicated a nature to be investigated in a motion in the same court for summary relief. (Willard Eq. Juris., 351; *Decker* v. *Judson* [per Denio, Ch. J.], 16 N. Y., 439–50; *Jones* v. *Grant*, 10 Paige, 348.) So that it may well be, that in an action pending in a court of both law and equity powers, the tribunal may not be able to mete out full justice to the parties litigant in the action pending before it, without entertaining a cross action, in which other facts shall be presented and other persons made parties, and in which last action, it may be needful that an injunction order issue, restraining the prosecution of the first. (See *Thursby* v. *Wills*, 1 Code Rep., 83.) And accordingly we find the circuit courts of the United States, on the equity side, entertaining a bill and awarding an injunction to restrain proceedings on the law side thereof. And it is held that this may be done before the commencement of the suit at law, pending such suit, or after its decision by the highest law tribunal. (*Parker* v. *Judges, etc.*, 12 Wheat., 561; *Dunlap* v. *Sisson*, 4 Mason, 349; *Humphrey* v. *Leggett*, 9 How. U. S., 297; *Nixdorff* v. *Smith*, 16 Peters, 132.)

And this difficulty in the way of giving full relief, may chance not only when the first action is one of law, but when it is an action in equity. It is true that it has been said in general terms by courts of chancery, that the court does not enjoin its own proceedings, and that an application to a court to restrain one of its suitors can scarcely be considered as seriously made. (*Medlock* v. *Cogburn*, 1 Rich. Chy., 477; *McReynolds* v. *Harshaw*, 2 Iredell Chy., 196.)

The cases just cited do not assert that there is no jurisdiction to entertain a cross-action, and in it to grant an injunction upon the original action. They hold an injunction in such case irregular. They do not hold it void. In *Hall* v. *Fisher* (1 Barb. Chy., 55), an injunction restraining a party from instituting a proceeding in equity to compel an account and payment of profits, was pronounced clearly wrong, because the complainant in the injunction action had an equitable defence to such a proceeding. But it was not held void. *Smith* v. *Am. Life Ins. and Trust Co.* (Clarke, Chy. Rep., 307), and *Lane* v. *Clark* (Id., 309), do not hold that there is no jurisdiction to grant an injunction. They are to the effect that it is not, as a general rule, a proper mode of obtaining a stay of proceedings. It is true, however, that a court of equity has restrained and does restrain its own suitors. Drewry on Injunctions, 105, states it as well settled, that a court of equity will exercise jurisdiction to restrain other proceedings in the same court. So in Willard on Equity Jurisprudence, 350, 351, it is said : " As an injunction to restrain proceedings at law, is directed only to the parties, and assumes no superiority over the court in which the action is pending, but is granted solely on the ground that some equitable circumstances exist, which render the prosecution at law against conscience ; there is no reason why an injunction should not be granted by the court in which the action is pending, if the court has jurisdiction both at law and in equity." It is to be observed, however, that the learned author cites no decision of a court of equity to sustain his declaration. It is, however, not uncommon for courts to stay the proceedings of suitors in actions pending before them. This is often done on affidavits or petition showing that injury will result to one party in an action, if the other party be permitted to proceed with the ordinary celerity allowed by the rules and practice of the court. But this is generally by the same court, in the same action, and for the purposes of that action. Yet they have, in instances, gone farther than this, and a court of law has stayed the proceed-

ings of one party to an action pending before it, to the end that the other party might bring an action in a court of equity to obtain the relief to which it appeared that he was entitled.

Had the court of law in the case last cited been possessed of jurisdiction in equity also, it would have restrained one suitor from proceeding on the law side of the court, that his opponent might commence an action against him on the equity side. It did ground its order of stay upon affidavits presenting facts and allegations not before shown in the action of which a stay was given. And it gave the order, so that a new and restraining action might be begun and determined in a court of equity. Now had it also possessed equity powers, could it not at once have entertained an action by a complaint in equity and upon that, and affidavits in that action have granted its order enjoining the suit at law pending before it? It would have been but a step further so to do. Instead of by affidavits or petition in the action pending, it would have become possessed of the facts warranting relief by complaint and affidavits in the new action. Those facts would as well warrant the entertaining the cross-action and the issuing an injunction order in it, as the stay of proceedings in the original action, so that the cross-action might be brought in another court. And jurisdiction would have existed for the one method, as for the other. But there is not such lack of precedent and authority for the position that a court of equity will entertain a fresh action in it, and in that action enjoin the suitors in action then pending before it. An action of interpleader in equity is such a case, in which a bill is filed for the relief of one, against whom several claim by legal or equitable suit the same thing, debt or duty, but who has incurred no independent liability to either of them, and does not himself claim an interest in the matter. In *Warrington* v. *Wheatstone* (Jacob's Rep., 202), an injunction was granted to restrain parties to another action in the same court, and this though the objection was made that the same relief could be had in the original action where the par-

ties were the same.  And though the reasons given by the court may be peculiarly of force in that class of cases, still it is shown that, in a case demanding it, jurisdiction exists, and that an injunction may issue in one action in a court to affect the proceedings in an action already pending in the same court. (And see *Campbell* v. *Fisher, supra ; Schuyler* v. *Pelissier, supra; Sieveking* v. *Behrens,* 2 Myl. & Craig, 581; *Prudential, etc.,* v. *Thomas,* Law Rep., 3 Chy. App. [Eng.] January, 1868, p. 74.)  And the chancellor, in *Richards* v. *Satter* (6 J. C. R., 445), says that the bill of interpleader is equally proper though the claim of one defendant be actionable at law and the other in equity.  (And see *Morgan* v. *Marsack,* 2 Merivale, 107.)  In *Cheeseborough* v. *Millard* (1 J. C. R., 409), the Court of Chancery, pending an action before it, entertained a cross-action seeking relief on the same subject-matter.  We have above alluded to the jurisdiction of equity to draw to itself the determination of numerous actions, in which the rights of many were sought to be enforced in what was substantially the same subject-matter, and also to its jurisdiction to entertain an action to prevent a multiplicity of actions.  In the exercise of this jurisdiction, it will enjoin proceedings in these actions, be they actions at law in another court or actions in equity pending before it.  So, on a bill of review, it will enjoin the execution of a decree theretofore granted by itself.  (*Basye* v. *Beard,* 12 B. Monr., 581.)

So, in an action for the marshalling of assets and securities.  So (in a minor degree), it will compel a suitor to elect between a suit at law, or one in equity, and the first being chosen, will stay proceedings in the last, or dismiss the bill.  So, on motion in an action, the court will restrain a solicitor from acting for one party in that action, or in any other action between the same parties in respect to the same matter.  (*Cholmondeley* v. *Clinton,* 19 Vesey, Jr., 261; and see *Briggs* v. *Head,* Sau. & Scu., 335; *Beer* v. *Ward,* Jacobs, 77.)

We may not say, then, much as we may deprecate the exercise of the power, unless in extreme cases, and where the most serious consequences would result from a refusal; we

may not say then, as a general unlimited proposition, that a court of equity has not in any case jurisdiction to entertain an action for relief, and upon the papers therein, grant an injunction restraining the proceedings in a prior action for equitable relief then pending before it.

There was abstract jurisdiction then, in the learned justice, who granted the injunction order, to entertain the question, and to decide, whether upon the complaint and affidavits in this action, an injunction order should be granted, or be refused. Having that jurisdiction, that power of decision, when the order was granted, it was to be respected as the legitimate and valid order of the court, so long as it was not set aside by the court itself, or upon appeal. The defendant not having obeyed it, but having taken a proceeding in the action, proceedings in which were enjoined, he was in contempt. But it is evident to us, that this contempt was not headstrong. He was advised by counsel, that the order was void, and might be disregarded. And though the advice of counsel will not excuse a disregard of an order, so far as the rights of a party have been affected (*Hanley* v. *Bennett*, 4 Paige, 163), we cannot but perceive, that both counsel and client had reason for faith that the advice was sound. It had been declared in an opinion from the General Term of the district in which this order of injunction was granted, and in a case in which the plaintiff in this action was a litigant, that an order of injunction made by a judge in an action pending in the Supreme Court in one district, restraining an action pending in that court in another district, was absolutely void and might be disregarded. (*Schell* v. *Erie Railway Company*, 51 Barb., 368.) As this stood unreversed, counsel and client might easily conceive that they could take it as a guide to their conduct, and though it does not justify, it does palliate.

Courts are authorized to take such facts into consideration, in determining the extent of punishment, which is to be awarded against a defendant for a breach of the injunction order. (*Sullivan* v. *Judah*, 4 Paige, 447; and see 1 Meri-

vale, 3.)   But the least that a court can do in such a case, is to require the derelict party to pay to his adversary the costs of the proceedings against him for contempt.   (Id.)   If an actual loss or injury shall have been produced to any party, by the misconduct alleged, a fine shall be imposed sufficient to indemnify such party, and to satisfy his costs and expenses. (2 R. S., 538, § 21.)   In all other cases the fine shall not exceed $250, over and above the costs and expenses of the proceedings.   (Id., § 22.)   We do not perceive from the papers, that the plaintiffs suffered any great actual loss or injury within the purview of section 21 of the statute.   There seem to have been many motions, and counter-motions, in the initiation of which the plaintiffs were quite as energetic as the defendant.

The punishment of the defendant will be quite severe enough, if it be limited to that imposed by the General Term.

The order of the General Term should be affirmed, but under the circumstances of the case, without costs of this appeal in this court to either party as against the other.

All concurring except ALLEN and RAPALLO, JJ., not voting, and PECKHAM, J., who did not sit.   Order affirmed.