Charles M. Hughes, J.
This is a proceeding brought on by an order to show cause why the respondent, Robert Wylie, should not be adjudged in contempt of the Supreme Court and be punished for such contempt. The proceeding is brought pursuant to section 406 of the Civil Practice Act. The facts upon which the proceeding was brought are set forth in the affidavits of the parties to this action.
The complainant, Samuel S. Stratton, Mayor of the City of Schenectady, undertook an investigation relative to the Police Department of the city. This investigation was carried on pursuant to section 42 of the Optional City Government Law of the State of New York (L. 1914, ch. 444). As a one-man investigating committee, the Mayor caused a subpoena to . be issued to Robert Wylie, an attorney and the clerk of the Police Court in and for the City of Schenectady, New York, to appear, attend and produce the following books and records: “Deposition filed on or about November 21, 1955, in support of information sworn to on or about that same date by Detective Sergeant Henry McDermott in the case of the People of the State of New York vs. Eugene D’Atillo.”
On March 3, 1956, the respondent was called as a witness and sworn and was examined. The testimony, in substance, revealed that he was asked to producé the above-mentioned *520 deposition which he refused on the ground that section 205 of the Code of Criminal Procedure of the State of New York provides that only a certain enumerated group of people are entitled to examine depositions or informations and that the Mayor of the City of Schenectady was not one of those specified.
The subpoena contained a general statement of the subject matter of the investigation that read as follows: ‘ ‘ Police Department performance and procedures in handling the matter of the People vs. Eugene D’Atillo.”
Briefly stated, the facts of that proceeding are that one Eugene D’Atillo was arrested sometime in May, 1955, and charged with book-making. He pleaded guilty to this charge at which time he was not represented by counsel. Thereafter, he obtained counsel and with the permission of the court, he changed his plea to not guilty.
In September of 1955, the case was dismissed on motion of his counsel, it appearing at that time that the People did not have evidence sufficient to make out a case against him. The People, at all times, were represented by the District Attorney’s office of Schenectady County. Sometime later, in 1955, the defendant was rearrested on the same charge and upon advice of counsel, entered a plea of guilty thereto and was fined by the Magistrate or Police Justice of the City of Schenectady.
The deposition sought to be subpoenaed is a deposition of an informant who has to date remained publicly unknown, taken by the then Magistrate or his clerk prior to the issuance of the warrant of arrest in May, 1955.
The deposition is in the custody of the Police Court of the City of Schenectady.
The primary question here is whether the Mayor, as a part of an investigation of the Police Department of the City of Schenectady, has the power to conduct an unlimited investigation into the Police Court of the city.
Upon the oral argument of this contempt proceeding, it was admitted by complainant’s counsel that the deposition in question was a record of the Police Court and not of the Police Department of the city. As to how far the Mayor or the City Council may examine or investigate into the records of a Police Court has not been decided or determined insofar as counsel or the court has been able to discover in the reported cases.
The Mayor and the Council have certain investigatory powers under section 42 of the Optional City Government Law. That section provides: ‘ ‘ The council, or the mayor, shall have the power to inquire into any matter relating to the affairs of the city, to compel by subpoena the attendance of witnesses ancj the *521 production of books and papers material to any such inquiry, to administer oaths to witnesses and to examine them and such books and papers.” (Italics supplied.)
There is no question as to the authority of the Mayor or the Council to investigate the Police Department of the City of Schenectady. It is argued by the complainant that certain police department records of necessity become court records in the prosecution of criminal cases. That this is true is without question. However, it does not necessarily follow that every court record which has come into contact with the Police Department of the city is, by virtue of such contact a Police Department record and, therefore, available to an investigating agency composed of the Mayor or the Council. To subscribe to such a view would, of necessity, eliminate any distinction between separate municipalities and the three separate and distinct branches of government.
The phrase, “ affairs of the city ” contained in section 42 of the Optional City Government Law, has received little or no judicial interpretation insofar as the Police Court is concerned. However, the Home Buie Amendment to the Constitution (art. IX, § 12) and the City Home Buie Law (§ 11, subds. 1, 2) has received judicial interpretation. The material part of section 12 of article IX of the home rule amendment, reads “ Every city shall have power to adopt and amend local laws not inconsistent with the constitution and laws of the state relating to its property, affairs or government.”
The phrase, “ property, affairs or government ” of a city is as comprehensive as the “ affairs of the city” as contained in section 42 of the Optional City Government Law.
The right of the Mayor or the Council to carry on an investigation into any department of the city, including the Police Department, is without question (Optional City Government Law, § 42). Whether this power of investigation extends to the Police Court whose jurisdiction and procedures are directly governed by the State Legislature is not clear. The City of Schenectady, under Second Class Cities Law of the State of New York (§§ 180-191) has been given a sphere of operation in regard to the fiscal affairs of the Police Court. The Legislature has gone no further.
An examination of the city charters, both repealed and existing provisions, fails to reveal any such power ever existing in the Mayor or the City Council. (L. 1888, ch. 134; L. 1862, ch.. 385; L. 1903, ch. 371; L. 1907, ch. 756.)
In construing the City Home Buie Amendment (art. IX, § 12) and the City Home Buie Law of the State of New York *522 (§ 11, subds. 1, 2) in regard to the phrase “ property, affairs or government ” in Adler v. Deegan (251 N. Y. 467, 489) Judge Cardozo wrote as follows: ‘ ‘ There are some affairs intimately connected with the exercise by the city of its corporate functions, which are city affairs only. Illustrations of these I have given, the laying out of parks, the building of recreation piers, the institution of public concerts. Many more could be enumerated. Most important of all perhaps is the control of the locality over payments from the local purse. (Matter of Mayor, etc., of N. Y. [Elm Street], 246 N. Y. 72.) There are other affairs exclusively those of the State, such as the law of domestic relations, of wills, of inheritance, of contracts, of. crimes not essentially local (for example, larceny or forgery), the organization of courts, the procedure therein. None of these things can be said to touch the affairs that a city is organized to regulate, whether we have reference to history or to tradition or to the existing forms of charters.”
The organization of the courts and the procedures to be followed therein are matters exclusively of State concern. They have never been subject to the control or regulation of municipalities within whose territorial confines they are situated. If a local legislative body were allowed to control or legislate in regard to the jurisdiction and procedures of a local Police Court, the resulting situation would be one of chaos. (Matter of Siracusa, 125 Misc. 882; People v. Aptaker, 25 N. Y. S. 2d 950.)
The prime consideration is whether the documents sought in this investigation were within the ‘ ‘ affairs of the city ’ ’ of Schenectady as provided in section 42 of the Optional City Q-overnment Law of the State of New York. This court is not considering the reasonableness, the wisdom, or the motive behind the investigation. However, the right to investigate of necessity has to have a foundation. It also implies the right to obtain information upon which the Mayor or the Council may be able to remedy a situation or enact laws. (Briggs v. MacKellar, 2 Abb. Prac. 30; People ex rel. Karlin v. Culkin, 248 N. Y. 465.)
The right to obtain information upon any matter exists where the Mayor or the Council have that right given by charter or by specific provision of law and where it has the right to legislate in reference to the matter being investigated. This court is unable to find any such right in the Mayor to require the Police Clerk of the Police Court of the City of Schenectady to produce a record of that court which is not a record of the Police Department itself. The Mayor and the Council have the power to investigate the acts and the fiscal affairs as distinguished from the judicial acts, jurisdiction and procedures of the Police Court. *523 The power to investigate has its limitations in that it must have a legitimate end in mind. A fishing expedition where it has no power of correction or legislation is not a proper basis for an investigation. By the same token, the Mayor or the City Council cannot investigate another separate distinct municipality, the county or the townships that may surround it even though it may have physical and contractual relationships with these political subdivisions.
The jurisdiction of the Police Court and its organization is controlled by the Legislature and the Appellate Division of the Supreme Court of the State of New York pursuant to sections 17 and 18 of article VI of the Constitution of the State of New York. (Also see, Second Class Cities Law, §§ 180-191; Code Grim. Pro., §§ 56, 59, 74, 132, 220.) The jurisdiction of the Police Court is set forth in sections 56, 57 and 59 of the Code of Criminal Procedure and section 180 of the Second Class Cities Law. Section 132 of the Criminal Code of Procedure provides for the removal of Justices of the Peace, Police Justices, Justices of the Justice Courts and their clerks by the Appellate Division of the Supreme Court. Section 220 of the Code of Criminal Procedure requires that the Justices’ criminal docket be available at all times for public inspection.
It is, therefore, seen that the Police Court is subject to the investigatory powers of the Appellate Division and the. Legislature of the State of New York. To subject the Police Court to direct local interference and control by investigation or otherwise, would possibly be a violation of the Constitution of the State of New York.
The respondent, Robert Wylie, stated his grounds for refusing to produce the deposition before the Mayor was that section 205 of the Code of Criminal Procedure prohibited him from exhibiting or producing the deposition. Section 205 of the Code of Criminal Procedure provides: “ The magistrate or his clerk must keep the depositions taken on the information or on the examination, and the statement of the defendant, if any, until they are returned to the proper court; and must not permit them to be inspected by any person, except a judge of a court having jurisdiction of the offense, the attorney general, the district attorney of the county, the defendant and his counsel and the complainant and his counsel.” (L. 1888, ch. 220, § 2, eff. May 4, 1888.)
This statute clearly reads “ depositions taken on the information or on the examination ” are to be made available only to certain specified individuals. The complainant’s argument that the-section applies only to depositions taken on the examination is *524 without merit. The words ‘ ‘ until they are returned to the proper court ’ ’ refer to section 221 of the Code of Criminal Procedure which requires the Magistrate “to * * * return to the clerk of the supreme court or county court or other court having power to inquire into the offenses by intervention of a grand jury, the warrant, if any, the depositions, the statements of the defendant, if he have made one ’ ’. The words, ‘ ‘ until they are returned to the proper court ” do not mean that they become public documents or papers, but merely refer to section 221 which provides for their further disposition. Otherwise, if such records were made available to any one other than the prescribed individuals, law enforcement could break down as well as in many cases, be thwarted.
The case of People ex rel. Willett v. Quinn (150 App. Div. 813) relied upon by the complainant, sheds some light upon the subject. In that case, the prosecution of a misdemeanor was involved and a public examination was had at which time depositions were reduced to writing. A contention in that case was made that the commitment was void because examination of the witnesses for the People was conducted in public rather than in private. In referring to section 205 of the Code of Criminal Procedure, the court said at page 819, “ Literally construed, this prohibition relates to the depositions, when complete, and the statement made by the accused, and not to the examinations which resulted in such depositions, or the information itself.” There, the defendant participated in the examination and made no objection that it was held in public; the court, therefore, refused to consider the objection.
The concurring opinion by Judge Woodward in referring to section 205 stated (pp. 830-831): “ It seems to me that this provision could have no possible purpose other than to secure secrecy for the preliminary proceedings on an information. When it is considered that at such stage of the proceedings no one has been charged with commission of a crime and that it may be that as a result of the inquiry no one will be so charged, the importance of secrecy is just as manifest as in the case of proceedings before a grand jury.”
It is common knowledge that grand jury proceedings are not only secretive but that their secrecy is inviolate. The grand jury is an historic institution. Its origin runs back to the days of Magna Carta in the early English Law. Prior to its adoption, many injustices arose from charges of crime through the Crown. Thereupon, the grand jury was established as a secret body. Upon the formation of our own government, we adopted this system and have continued its use to the present day. The *525 minutes of their proceedings are not available except by court order under restrictive and limited conditions. The proceedings before a grand jury result in an indictment or a no bill being returned. Proceedings by the Police Court by subpoena and by depositions for the purpose of determining whether a crime has been committed is very akin to a grand jury proceeding. On the basis of the facts presented in a deposition, an information may be laid and a warrant of arrest issued. The proceedings then become entitled, “ The People of the State of New York ” against a named defendant, whether it be an indictment or an information. Other cases stating that the depositions are to remain secret are People ex rel. Livingston v. Wyatt (113 App. Div. 111) and People ex rel. Kenney v. Cornell (6 Misc. 568).
The Mayor of the City of Schenectady by virtue of the optional city form of government is not what is commonly known as the executive head of the city. The power of appointment is reserved to the City Manager by section 92 of Optional City Government Law. Under section 93 of the Optional City Government Law, all employees and heads of departments are responsible to the City Manager and to the general regulations of the Council. The Mayor is what may be termed a limited executive under the Optional City Government Law and it is very doubtful that it was ever intended that the Mayor even though a member of the Council would be given the same and equal jurisdiction over the Police Court that the Appellate Division and the State Legislature has over that court by virtue of sections 17 and 18 of article VI of the Constitution of the State of New York.
There is no affirmative showing that the clerk of the Police Court, the joint custodian with the Police Justice of the records in that court, had authority by law or otherwise to produce the deposition involved. He is a subordinate directly responsible to the Police Justice and is without authority to remove or exhibit any records of the Police Court except as prescribed by law or by virtue of direction or authority of the Police Justice.
Contempt is a drastic remedy, and, therefore, before it is invoked, the right to use it must be clear. (Matter of Battista, 176 Misc. 85.) It has also been held that such a proceeding is quasi criminal in character. (Erie Ry. Co. v. Ramsey, 45 N. Y. 637; People ex rel. Phillips v. Sutherland, 9 App. Div. 313.) One cannot be punished for contempt for not doing what he did not have the power to do. (Greenberg v. Polansky, 140 App. Div. 326.)
The relief sought here is a directive by the court to the respondent to produce thé documents in question and in the *526 event they are not produced, to adjudge the respondent guilty of contempt of this court. A witness should not be punished for contempt without the opportunity to the witness to purge himself of contempt. (Matter of Costello [O’Leary], 50 N. Y. S. 2d 556, appeal dismissed 268 App. Div. 223.)
This court can take judicial notice that the respondent is no longer the clerk of the Police Court and that it would be impossible for him not only to perform the act prayed for, but that he would be unable to do so even if he sought to perform it. This court, however, does not base its opinion upon the subsequent facts since the commencement of this proceeding. It feels that the matter is of sufficient importance to be disposed of on its merits.
The court has examined the cases cited by the complainant and finds nothing contained therein contrary to the conclusions and the opinion reached herein.
In accordance with the above, the complainant’s petition to hold the respondent, Robert Wylie, in contempt is dismissed.
Submit order.