[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 487 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 488 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 489 
The judge found as facts, that, from the organization of the Buffalo Creek Railroad Company, to the date of the findings, Campbell and Mills, the lessees named in the lease from the city of Buffalo, dated April 7, 1871, were directors of the company. That the building of the railroad tracks and trestle works upon and over the demised premises, was done with their knowledge and consent. That Campbell was employed by the company, and, among other things, to procure rights of way for the company, and was paid a salary for his services. That the plaintiff was, from the organization of the company, one of the directors thereof, and continued such until after the 16th of June, 1871, on which day the lease was assigned to him by Campbell and Mills. There is no exception to any of these findings of fact. The references to evidence, claimed to be inconsistent with them, are, therefore, of no importance in this court.
The duty of constructing the railroad devolved upon the directors of the corporation, and they were bound to exercise it in a proper manner. The obtaining of the right of way was an essential part of this duty, resting upon all the directors, and especially upon Campbell, to whom it seems to have been particularly delegated by his associates, and who received a salary for his services.
Occupying this relation of trust toward the corporation and its stockholders, these directors were bound, in all matters pertaining to the construction of the road and the acquisition *Page 491 
of the roadway, to act as the representatives, and for the benefit of the company. Well settled rules forbade their acquiring, for themselves, the property, which it was their duty to acquire for the company, and which was necessary for its purposes. Such a dealing would be equally objectionable, as purchasing from the company land which it was their duty to sell on its behalf. In respect to this class of dealings, directors of corporations stand upon the same footing as ordinary trustees. (Aberdeen R.W. v. Blakie, 1 MacQueen, 461; Hoffman Coal Co. v. Cumberland Coal Co., 16 Maryland, 456; Cumberland Coal Co. v. Sherman, 30 Barb., 553, and cases cited.) It is a rule of equity of universal application, that no person can be permitted to purchase an interest in property, when he has a duty to perform in relation to such property which is inconsistent with the character of a purchaser. (Ringo v. Binns, 10 Peters, 269; Van Epps v. Van Epps, 9 Paige, 238; Torrey v. Bank ofOrleans, id., 649; S.C., on appeal, 7 Hill, 260; Carter v.Palmer, 1 Dru. Walsh, 722; York Buildings Co. v.MacKenzie, 8 Bro. P.C., 42; 3 Paton, 378; Gardner v. Ogden,22 N.Y., 327, and cases cited; Anderson v. Lemon,
8 id., 236.)
It would be difficult to conceive a more gross violation of the rules governing the relation of trustee and cestui que trust,
than to permit the directors of a corporation formed for the purpose of constructing a railroad, whose duty it was to acquire the right of way, to expend the funds of the corporation in expensive erections upon land necessary for the roadway, but which the company had not acquired the right to use, and at the same time to purchase or hire the same land in their individual right, and avail themselves of the title thus acquired to make extortionate demands upon the company for the use of the land, and in default of submission to such demands, to destroy the erections they had themselves made as agents for, and at the expense of the company. The abuses to which the sanctioning of such transactions would lead, are too apparent to require illustration. Yet such is, in substance, the nature of the dealing *Page 492 
in which the plaintiff in the present case has applied to the court to uphold and protect him.
Assuming that no valid right of way across the strip of land designated as the "south channel" had been obtained from the city of Buffalo, or at least that there was no right in the company to occupy that portion of it which was covered by the trestle work, Campbell, the director and salaried agent of the company, whose special duty it was to obtain the right of way, must have known the facts, and was bound to proceed to perfect the right of the company to use the land in question. He clearly was not in a position to deal with it for his own benefit. He took a lease from the city to himself and Mills of the whole strip of land, at a yearly rent of $150. A very small part of this strip was used by the railroad. The road crossed it in two places. Had Campbell been sole lessee hardly any one would question that he must be presumed to have been acting for the benefit of the company in taking this lease, at least to the extent of the land required for the purposes of the railroad, if not for the whole, and that he would not be permitted to hold in hostility to the company. Did the joining of Mills in the lease make any difference? I think not. In the first place, Mills was himself a director at the time, and under the same disability as Campbell. But in addition to this he knew the special relation which Campbell bore to the company, and even if he had been a stranger to the company, would, in consequence of that notice, be subjected to all the equities of the company against Campbell. A similar point arose and was decided in the case of Hoffman Coal Co. v.Cumberland Coal Co (16 Md., 456).
It does not appear in the case that either Campbell or Mills ever, under this lease, asserted any right hostile to the company, and it may legitimately be assumed that they took and held the lease for the benefit of the company. The presumption is, that they acted in accordance with their duty rather than in violation of it. In June, 1871, they assigned the lease to the plaintiff, then a director of the company. *Page 493 
He took it with full notice of the equities of the company. Up to this time no claim hostile to the company had been asserted under the lease; but on the 11th of January, 1872, the plaintiff demanded of the company $900 rent, for nine months' use of the land occupied by the trestle work in crossing the strip in question, a comparatively trifling part of the land, for the whole of which the rent under the lease was $150 per annum.
This demand was naturally rejected, and afterwards, on October 2, 1872, the plaintiff, with a large number of men, by force, entered upon and took possession of the premises in dispute and tore up the tracks and pulled down the trestle work, and three days afterwards commenced this action to restrain the company from re-entering and rebuilding.
That the relief demanded by the plaintiff was properly denied, seems too clear for discussion. The only debatable question is whether the affirmative relief granted to the railroad company is justified by the facts.
The court at Special Term held the lease from the city of Buffalo, under which the plaintiff claims, to be invalid. Whether or not the General Term concurred in this conclusion we are not informed, as no opinion was there delivered, and the grounds of the decision are not disclosed. In the view we take of the case it is not necessary to pass upon the question of the validity of the lease, for even if valid, we are of opinion that the plaintiff, by reason of the trust relation subsisting between his grantors and the company, and between him and the company, is precluded from asserting any rights under the lease, hostile to the maintenance by the company of its road over the premises in dispute. The declaration and enforcement of such a trust are peculiarly within the province of a court of equity, and we think, that when the trustee comes into equity claiming its protection for his alleged legal title, as against the cestuique trust, it is competent for the court to declare that title subject to the trust, and to restrain the trustee from asserting any further claim in violation of his trust. This could have been done *Page 494 
under the former system by a cross bill, and under the Code the power to award affirmative relief to the defendant enables the court to afford a like remedy in the original action.
The appellant claims that this relief should not have been granted without charging the railroad company with its pro rata
share of the rent payable to the city. No such claim was made in the pleadings or upon the trial. The plaintiff rested upon a denial of all right in the defendant. When the claim for contribution is made by the plaintiff, it will be time to consider it; we do not think it now in the case.
The judgment should be affirmed, with costs.
All concur.
Judgment affirmed.