Van Vorst, J.
The defendants demur to the complaint, and specify as the grounds of demurrer that the complaint does not state facts sufficient to constitute a cause of action. The complaint alleged that the defendants were the promoters of the organization of a mining corporation, called the Dunderberg Mining Company, and obtained from the plaintiffs and others subscriptions to the capital stock of the proposed corporation. By the terms of the subscription it was stated that the corporation was about to be organized for the purpose, among other things, of acquiring title to certain mines or lodes situate in the State of Colorado.
The capital stock of the proposed corporation was to consist of 150,000 shares, of the par value of §10 each, *402 and all of the stock was to be issued to the defendant, J. Warren Brown, as trustee, in payment for the property. The subscribers agreed that they would accept and receive the stock for which they had subscribed, at the rate of $4 per share, and that for the purpose of carrying out their agreement they would pay to the° defendant, Walter T. Hatch, as trustee for the subscribers, the amount of their subscriptions, to beheld by the trustee for the subscribers, and to be by him paid over to J. Warren Brown, trustee, upon the delivery, to the corporation to be organized, of a deed of the mining property, and upon the receipt from Brown of the shares for which they had subscribed. Upon such terms and conditions, subscriptions'were obtained from the plaintiffs and others, to the amount of 63,000 shares. Afterwards the corporation was duly organized, under the act of the Legislature for the formation of manufacturing and mining companies, the defendants Hatch and Brown, with the other defendants, being trustees thereof. Hatch, acting for himself and his associates, afterwards demanded from the subscribers payment for those shares, and collected from the subscribers, for the 63,000 shares, the sum of $250,000 and upwards. Whereupon the entire capital stock was issued and delivered to the defendant Brown, individually, who thereupon delivered to the subscribers for the 63,000 shares scrip for the shares for which they had severally subscribed, but retained and held, to himself and his five associates 86,000 shares, which shares, or the proceeds thereof, they still hold. The mining property and lodes were in fact purchased by Brown for the sum of $242,000, the whole of the purchase-money having been realized by Brown and his five associates from the sale of the 63,000 shares of the stock of the company, and upon the same day upon which he received a deed therefor he conveyed the ■ same to the corporation. The plaintiffs allege that they were ignorant of the *403 facts that the mines could be bought for less than the whole of the 150,000 shares of stock, or of the proceeds of the sale thereof, at $4 per share, and that Brown and his five associates knew that the mines could be purchased for a sum not exceeding $237,000, and fraudulently concealed such knowledge and facts from the plaintiffs, and falsely represented to the plaintiffs that the whole of the 150,000 shares of stock would be required to purchase the mines, and obtained the issue of all such shares to J. Warren Brown in pretended payment for the mines, and that, having purchased the same for a sum not exceeding the proceeds of the 63,000 shares subscribed for, they withhold from the plaintiffs and other subscribers 86,000 shares which they have appropriated to their own use.
It seems to me to be quite clear that the bare statement of these facts which, for the purpose of this hearing, the defendants, by their demurrer, concede to be true, presents a case which entitles the aggrieved parties to substantial relief. It is difficult to conceive upon what principle of justice or equity the defendants could hope to retain to themselves, without having parted with any consideration therefor, the 86,000 shares of stock, or to escape liability for the appropriation of them to their own use. Such a transaction is condemned in reason, and authority is not wanted to show that it cannot be upheld. This appropriation to themselves of the 86,000 shares by the defendants, without consideration, is a wrong primarily to the corporation and its creditors, if ithas any, and secondarily, both directly and indirectly, to the body of the stockholders of the 63,000 shares, who contributed the only funds used for the purchase of the mining property.
And first as to the corporation : The defendants held themselves out as promoters of its organization, one purpose of which was to acquire title to these mines after the corporation should be organized. By the *404 paper, which the plaintiffs and others were asked to sign in order to constitute themselves stockholders in the contemplated corporation, the defendants Brown and Hatch are declared to be trustees. The defendant Hatch, as such trustee, was to receive from the subscribers, and hold for them, the money for the stock which they had agreed to take, and he was to pay over the same to Brown, as trustee, upon the delivery to the corporation, which was about to be organized, of a deed or deeds for the mining property, at which time Brown was to deliver the shares subscribed for. The paper distinctly says that all of the stock was to be delivered in payment for the mines. Brown was clearly a trustee from the beginning, and occupied a fiduciary relation to all of the subscribers, and the corporation, when organized on May 8, and of which he became in fact a trustee, was thereupon, as well as the subscribers, cestuis que trust. Brown was called upon from his fiduciary relation to act in good faith not only towards the subscribers, but to the corporation itself. He cannot be upheld in making any false statement or fraudulent concealment with respect either to the contemplated or actual cost of the mines. When he spoke he was called upon to do so truly, and he could withhold no facts from the corporation or the subscribers, to his personal advantage, which were entitled to be considered in fixing the price to be paid for the property, or the manner of its payment by the corporation. Neither Brown nor his associates, defendants, who were familiar with the facts in regard to the value of the mine, and the price at which it could be, and for which it was afterward purchased, may make for themselves, as individuals, any profit from the transaction.
This case has its peculiar facts ; but in their details and methods such transactions vary. Analogies in cases at law or in equity are never perfect; but it is the province bf a court of equity to discover if there *405 be any wrong in the transaction which it is called upon to scrutinize, whatever the facts or surrounding circumstances may be, and exercise its plenary power to remedy it.
After the organization of the corporation formed for the purpose of acquiring title thereto, Brown purchased the property for the sum of $242,000, the whole of the purchase price being furnished by the subscribers to a portion of the stock ; he took title in his individual name, he being at .the time a trustee of the corporation, and on the same day on which he took the conveyance he deeded it to the corporation, and received, as the consideration for the deed, the whole capital stock, turning over to the subscribers 63,000 shares, and retaining for the use of himself and his five associates 86,000 shares.
That a trustee may not enrich himself through the use of his position, at the expense of the cestuis que trust, whose interests are committed to his guardianship, is fundamental in equity and conscience. Partners, guardians and trustees for individuals or corporations must exercise uberrima fldes towards those whose interests they guard.
I have already said that authority is not wanting to show that the position taken by these defendants, who are severally trustees of the corporation, Brown himself being the presidént thereof, cannot in equity be maintained, but that otherwise relief adequate to the injury should be awarded. The views above expressed are well sustained by the following, among other cases : Blake v. Buffalo Creek R. R. Co., 56 N. Y. 485; Cumberland Coal & Iron Co. v. Sherman, 30 Barb. 553; Bagnall v. Carlton, Law R. (6 Ch. Div.) 371; Eslanger v. New Sombrero Phosphate Co., Law R. (3 App. Cases) 1218; Simons v. Vulcan Oil and Mining Co., 61 Penn. St. 202.
The decision of the issue of law raised by the de *406 murrer, in the plaintiff’s favor, which concedes facts which in the end may not be established by proof, does not call upon the court to determine absolutely the specific relief, in form, which should be granted. It is enough for the present to announce that from the allegation of the complaint some relief should be awarded, so that the defendants should be held accountable for the 86,000 shares of stock, or its proceeds, which they have reserved to their own use.
This suit is brought by the plaintiffs for themselves, and in behalf of all other stockholders of the corporation, and not by the corporation itself.
In view of what has been above stated, the corporation' is the party primarily aggrieved by the acts of the defendants, its trustees, and is the party who is logically entitled to maintain the action for redress. When the corporation has been made whole, the stockholders would receive the benefit (Greaves v. George, 49 How. Pr. 79, and cases cited; aff’d, as Greaves v. Gouge, 69 N. Y. 154).
But the corporation is completely controlled by the defendants, who are its trustees, and it is unreasonable to suppose that they would be diligent in the prosecution of themselves. It is not a universal rule, that the ultimate rights of stockholders are shut up to an action by the corporation. If it appears that justice may not be reached in that way, under all the facts, then the stockholders may sue, making the corporation a party defendant. To have requested the present officers of the corporation to bring this action would have been a needless ceremony (Heath v. Erie R. R. Co., 8 Blatchf. 347.
But the complaint discloses a state of facts, showing special damage and injury to the plaintiffs, growing out of the representations alleged to have been made by the defendants to induce the subscriptions to the *407 capital stock, which have proved to be untrue, and out of a concealment of material facts, which, from the relations in which Brown and Hatch stood to them as trustees, the defendants were bound to disclose, which entitles the plaintiffs to maintain this action.
The result reached is that there should be judgment for the plain tiffs on the demurrer, with liberty to the defendants to answer on the payment of costs.