THE MANHATTAN RAILWAY COMPANY, RESPONDENT,
v. THE NEW YORK ELEVATED RAILWAY COMPANY
AND THE METROPOLITAN ELEVATED RAILWAY
COMPANY AND OTHERS, APPELLANTS.

*Action to restrain the bringing of numerous and vexatious suits against the plaintiff —
when it cannot be maintained.*

Prior to July, 1881, the plaintiff, the Manhattan Railway Company, and the defend-
ants, the New York Elevated Railway Company and the Metropolitan Elevated
Railway Company, had been operating their several lines under an agree-
ment entered into on May 20, 1879, which had been authorized and afterwards
ratified by the stockholders of the Metropolitan Company. The plaintiff by
this agreement guaranteed the payment of ten per cent annual dividends upon
the stock of the latter companies, the substance of the guaranty being printed
on its stock certificates. In July, 1881, two receivers of the property of the
plaintiff were appointed in an action brought against it by the attorney-general.
In October, 1881, the directors of the three companies entered into a new
agreement, modifying the former one so as to reduce the dividends from ten
to six per cent, providing that no new dividends should be paid on the stock
of the Metropolitan Company until six per cent annual dividends and all defi-
ciencies occurring 'in any previous years had been paid to the New York
Elevated Railway Company, and releasing the plaintiff from the payment of
$325,000 due to the Metropolitan Company for back dividends under the
former agreement, while the back dividends due to the New York Elevated
Company were paid to it. This agreement was made without the consent of.
the stockholders of the Metropolitan Company. Subsequently upon the peti-
tion of the three companies the property of the plaintiff was restored to it.
Thereafter an agreement was made by the directors of the three companies by
which the stockholders of the two defendant companies were allowed to
exchange their stock for that of the plaintiff, the stock issued to the New York
Elevated Railway Company to have a preference over that issued to the Metro-
politan, and both to have a preference over the plaintiff's own stock until six
per cent had been paid upon the preferred stock.
A majority of the stockholders of the Metropolitan Company disapproved of
these agreements, and some of them claiming to act for the best interests of the
whole brought actions to have these agreements set aside on the ground that
they were made with the intent to defraud them, it being alleged that the board
of directors acted in the interests of and in collusion with the two other com-
panies in making them. A new board of directors having been elected by the
stockholders of the Metropolitan Company a similar action was instituted by it.
The plaintiff brought this action to restrain the beginning of further litigation
by the dissatisfied stockholders, and to compel them to submit all their griev.

ances for adjudication in this suit, on the ground that the injury to the plaintiff would otherwise be irreparable.

*Held,* that the court below erred in granting a temporary injunction restraining the bringing of such actions and restraining the Metropolitan Company from issuing certificates of stock having the aforesaid guaranty printed thereon.

APPEALS, *first,* from an order of the Special Term of the 20th day of June, 1882, continuing an injunction order of December 9, 1881, which restrained Jacob Berry and all other individual defendants. and all other stockholders of the Metropolitan Elevated Railway Company, from bringing any actions against the plaintiff on account of the agreement of October 22, 1881, and which also restrained the individual defendants from bringing like actions against the defendant, The Metropolitan Elevated Railway Company, and,

*Second.* From an order of the Special Term of the 14th day of December, 1882, continuing an injunction granted on the 6th day of November, 1882, restraining the Metropolitan Elevated Railway Company from issuing any certificates of stock, having thereon a memorandum similar to those usually placed in its certificates issued previous to the agreements of October 22, 1881, or anything to the effect that the plaintiff had agreed to pay to the Metropolitan Elevated Railway Company an amount equal to ten per cent per annum on the capital stock of the latter company.

*S. P. Nash,* for individual defendants and appellants.

*Barlow & Olney,* for the defendant and appellant, The Metropolitan Elevated Railway Company, and for individual defendants and appellants.

*David Dudley Field,* for the plaintiff and respondent.

MACOMBER, J. :

The general question is whether there exists any good reason for the court to restrain the individual defendants and the Metropolitan Elevated Railway Company from challenging, through such judicial proceedings as they may adopt, the validity of the agreement of October 22, 1881.

Up to July, 1881, the plaintiff and the two defendant corporations had been operating the several lines of the elevated railways under an agreement entered into by them May 20, 1879, which had been

authorized and afterwards ratified by the stockholders of the Metropolitan Elevated Railway Company; and the several companies during that time seem to have been at peace. By the terms of the contract as well as by the lease from the Metropolitan Company of its railways to the plaintiff, the plaintiff, among other covenants, guaranteed to the Metropolitan Company an annual dividend of ten per cent on the capital stock of the latter to the amount of $6,500,000 free of all taxes, the substance of which guaranty was to be printed or engraved upon the stock certificates of the Metropolitan Company. On the 14th day of July, 1881, in an action brought by the attorney-general in the name of The People against The Manhattan Railway Company, all the property of that company was by order of court put into the hands of two joint receivers, and that company itself was by the same order restrained from exercising its functions or operating under its franchises.

The directors of the three corporations, without the consent at least of the stockholders of the Metropolitan Company, subsequently made the agreement of October 22, 1881, by which the old agreement was modified by reducing the dividends to six per cent per annum, and by which the Metropolitan Company was subordinated to the New York Company and was to receive no dividends until the latter had received its six per cent in full for every year, the deficiency of one year to be made up the next year if necessary, and whereby the plaintiff was released from $325,000 of back dividends due the Metropolitan Company, but such back dividends were paid to the New York Company.

The three corporations then petitioned the court to restore to the plaintiff its property, which was accordingly done. On the 14th of November, 1881, a further agreement was made by the three companies, acting only through their boards of directors, so far as is disclosed by the proofs, whereby the stockholders of the two defendant companies were allowed to exchange their stock for an equal amount of the stock of the plaintiff, the stock for the New York Company to be the first preferred stock, and the holders thereof to be paid six per cent per annum, if so much was earned, the stock to be issued to the stockholders of the Metropolitan Company to be called second preferred stock and should be subordinated to the claim of the first preferred stock, but (if the earnings proved

sufficient) to draw six per cent dividends. The old stock of the Manhattan Company, amounting to $13,000,000, was denominated common stock and was not to draw dividends until after the six per cent per annum had been paid to the New York and to the Metropolitan holders of the new stock of the Manhattan Company.

On the 17th of November, 1881, in the case of *The People* v. *The Manhattan Company*, the court at Special Term pronounced what is termed a judgment, by which by way of recital it approved of the agreements of October twenty-second and November fourteenth as a just settlement of the controversies between the companies, and then declared and adjudged that the agreement between the three companies, made on the 22d day of October, 1881, required no ratification thereof by the stockholders of either of said corporations to cause them to become valid obligations between the corporations, " and the same are hereby confirmed and established as a final settlement and conclusion of all questions in this action."

The majority of the stockholders of the Metropolitan Company do not appear to approve of the means used, or the result itself, by which the contract of May 20, 1879, has been abrogated without their consent. And some of them, apparently acting for the best interests of the whole, have brought three actions in this and another court, the object of which is to protect their pecuniary rights against what they claim to be the devices of the boards of directors to defraud them.

The plaintiff, well content to maintain the *status quo*, under allegations showing the pendency of such suits and that other like actions are threatened, brings this action, which is termed a bill of peace, to restrain the beginning of further litigation by the dissatisfied stockholders and to compel them to submit all their grievances for adjudication in this suit, because otherwise the injury to the plaintiff would be irreparable. The control, however, of the Metropolitan Company having in the meantime passed into the hands of directors in sympathy with its stockholders who object to being bound by the agreement of October 22, 1881, a supplemental bill was filed upon which the subjacent injunction mentioned in clause second of the preliminary statement of this opinion was issued.

All allegations in the complaint and accompanying affidavits relat-

ing to the bringing of a multiplicity of actions by the stockholders of the Metropolitan Company are denied by the defendants, who aver that it has not been and is not their intention to institute any more actions than are necessary to a complete adjudication of the rights of such stockholders under vested contracts.

If the rights of the defendants have been invaded in the manner alleged by them the offense of the plaintiff is not merely the ordinary breach of a contract for which an action at law would afford an adequate remedy, but it is a wrong by which through the aid of a board of directors of the defendant corporations, which, as is claimed, was more watchful of the interests of the plaintiff than of its own stockholders, a large portion of the stockholders have been defrauded. The gravamen of the defendants' grievance is that by a tort they have been deprived of the benefits of a fair and valuable contract. Probably if the injunction were vacated the Metropolitan Company could by an action at law against the plaintiff upon its original guaranty test the validity of the subsequent agreements if they were set up as a defense to the action. But the real issue in such an action would be the alleged fraud or the power of the boards of directors to contract, for it is clear, under the proofs now before the court, that the Manhattan Company could not shield itself behind the seal of the Metropolitan Company affixed to the agreements, for the reason that it must be charged with knowledge that the subsequent agreements not having the consent of the stockholders were *ultra vires* and voidable.

But even if it were otherwise there would be open to the Metropolitan Company a remedy on the equity side of the court to set aside these agreements upon the same grounds; and in such an action, under the changed relations wrought in the directorship of the company since this action was brought, a complete adjudication could be had, not only of the legal rights of the Metropolitan Company but as an incident thereto of the right also of its several stockholders. Hence it appears, inasmuch as the individual stockholders of the Metropolitan Company acting with ordinary intelligence would not seek to bring an action for each of themselves separately (which could not be maintained unless the corporation could not or would not bring it), that the plaintiff's fear of a multiplicity of actions is without just or reasonable cause.

When this action was begun, however, as the affidavits show, the direction of the Metropolitan Company was in the hands of the persons representing the plaintiff, and therefore it could not reasonably be expected that it would assert, as against the interests of the plaintiff, its own clear rights and those of its stockholders. That condition of things was brought about by the managers of the plaintiff. The Metropolitan Company being thus ham-strung and unable as a corporation to advance, it was natural and permissible for its stockholders, either as a body or separately, to take action in its and their own behalf. So the state of affairs by which many actions could be directed against the plaintiff was brought about by the acts of the plaintiff's own managers, if the proofs before us are correct, and that the plaintiff should be permitted to complain of it and make it the groundwork of a bill of peace, takes the case outside the gravity with which equity principles are wont to be discussed.

Aside, therefore, from the denials which the defendants make to the charge of threatening a multiplicity of action (and such denials are taken as true), it appears to the court that the plaintiff is not in a position to invoke the aid of equity to stay such litigation.

The adjudications are uniform, that the power of the court to restrain parties who are aggrieved from instituting their actions ought not to be exercised except in extreme and clear cases. (*Erie Railroad Co.* v. *Ramsey*, 45 N. Y., 653.)

None of the cases cited by the learned judge in his opinion pronounced at the Special Term, and which are mainly relied on by the respondents, are so comprehensive as to cover the facts of this case as disclosed by the affidavits. In the case of the *New York and New Haven Railroad Company* v. *Schuyler* (17 N. Y., 592) a considerable number of suits had been already brought and many others were impending. It was a case of the confusion of genuine and spurious certificates of stock made by an unfaithful agent of the railroad company. But the company had not adopted any of such fraudulent acts, and merely brought all the holders, upwards of 300 in number, into court to ascertain whose shares were genuine. In the *Third Avenue Railroad Company* v. *The Mayor, etc.* (54 N. Y., 159), seventy-seven actions were pending between the same parties and the order of the court was to effect a result, which in this court

would have been accomplished by a consolidation of the actions, and one of them was permitted to be tried while the trial of the others was in the meantime restrained.   The other citations not bearing so nearly upon the question do not require special comment.   For authorities bearing generally upon the question in support of this decision, see *Wallack* v. *The Society, etc.* (67 N. Y., 23, 28); *Wolfe* v. *Burke* (56 id., 115); *Town of Venice* v. *Woodruff* (62 id., 471); *The People* v. *Canal Board* (55 id., 390).

The learned counsel for the plaintiff makes a special claim to the interposition and protection of the court, because, as he says, the plaintiff is under the various agreements not only lessee, but agent, trustee and *quasi* partner, and he points to article thirteen of the lease whereby the Metropolitan Company made the Manhattan Company "its agent and attorney to do in its name any and all things necessary to be done for the complete execution of this instrument."   This relationship of the parties, taken in connection with the proofs that at the time of making the October agreement the boards of directors of all the companies were controlled by the plaintiff or its managers, may be deemed in its broadest sense to be true.   What then is the outcome of it?   It is this: The plaintiff, occupying a fiduciary relation to the defendants under the contract and lease of May 20, 1879, entered into another two years and a-half afterwards without the consent of the real persons in interest by which the terms of the original agreement to which they had given their consent were impaired to their detriment and to the advantage of the plaintiff.   This may, indeed, be reason for invoking another well recognized equity principle in favor of the defendants, which pronounces such dealing with the property rights of the *cestui que trust* to be against public policy.   In the case of the *Aberdeen Railway Company* v. *Blakie & Brothers* (2 Eq., 1281), which was an action for a specific performance of a contract to purchase of the plaintiffs iron chairs at an agreed price, it appeared that one of the plaintiffs was a manager of the defendant but had taken no active part in effecting the bargain.   The house of lords reversing the decision below held unanimously that the contract could not be enforced in equity because against public policy, for the reason that it was the duty of the plaintiff, as a manager of the defendant cor-

poration, to buy at the cheapest rate, while it was for his interest as seller to obtain the greatest price for his chairs.

In *Thomas* v. *The Brownsville, etc., Railway Company* (2 Fed. Rep., 877) it was held that a contract between a railroad and a construction company is voidable where any of the directors of the railroad are members of the construction company.

In *Farley* v. *St. Paul, Minneapolis and Manitoba Railroad Company* (14 Fed. Rep., 114) it was held that a party whose official duties to the beneficiary were both advisory and fiduciary could not be permitted to ask a court of equity to assist him in compelling confederates to share with him profits acquired through his own concealments and deceits in the betrayal of his trust.

In *Flanagan* v. *Great Western Railway Company* (L. R., 7 Eq., 116) the defendant, a railway company, owned a refreshment room at a station. The plaintiff, a director of the company, contracted for a lease of the refreshment room for the benefit of a firm of which he was a member. It was held not enforcible because the plaintiff's duties as a director to lease it for the highest possible rent, etc., necessarily clashed with his interests as lessee to get the property for a small rent and at as good terms for himself as possible. (See, also, *Blake* v. *Buffalo Creek R. R. Co.*, 56 N. Y., 485; *Bliss* v. *Matteson*, 45 id., 22.)

This action, it is true, is not for a specific performance of the modified agreement. But the preliminary injunctions, so far as they are based upon the alleged validity of that agreement, do not present a case differing in principle from the cases cited.

It is also sought to uphold these injunctions, because this court, in the *mandamus* proceedings instituted by Noah Content, by affirming the order denying the writ passed upon and upheld the validity of the agreement of October, 1881. The history of that case is set forth in the defendants' affidavits, and needs no comment. The belief of the court, induced by the representation of counsel on both sides, that all the parties to that proceeding were desirous only of expediting the case, so as to obtain a speedy decision of the Court of Appeals therein, seems to have been unfounded. That decision cannot be regarded as any obstacle to our conclusion in this case, because the order made in the *mandamus* proceedings was correct in any view which might have been taken of the case, for

the reason that Mr. Content. had certainly mistaken his remedy, and the decision could have properly been put on that ground alone.

It is hardly necessary to say that this opinion is not intended to go further than is required to decide the appeals, namely, to show that there exists no legal reason why the plaintiff should longer hold the injunction, or why the defendants should longer be deprived of such suits as may be required to redress their grievances.

The orders appealed from should be reversed, with costs.

DANIELS, J.:

I concur in the result, the controversy being one that does not justify an injunction of the nature of that which has been issued.

DAVIS, P. J.:

I concur on the ground that upon the facts appearing by all the papers the granting of the injunction was an improvident exercise of the power of the court, or, in other words, that the case presented is not one in which equity should interfere by bill *quia timet.*

Orders reversed, with costs.