FRANK RUDD, as Receiver, etc., of the GOODWILLIE-WYMAN COMPANY, Plaintiff, *v.* GEORGE H. ROBINSON, Defendant.

*Trustee of a corporation — its account-books, when evidence against him — payment, by the corporation of a debt owing to him by a firm, its predecessor· in business — of illegal interest — of profits on business ventures carried on by the corporation with his money — when recoverable — chattel mortgage given to him to secure money advanced not filed when given — validity thereof.*

In an action, brought to charge the defendant, as a trustee of a corporation, formed under the manufacturing laws of this State, with money improperly received by him from the corporation, by a receiver appointed on the application of a judgment-debtor thereof, it appeared that the defendant had been, from time to time, applied to by the corporation for financial aid, and that of the five trustees of the corporation two of them were identified with the defendant in the management and direction of its business, and were at all times in a position to dictate as to what should be done in the management of the affairs of the company.

This corporation succeeded to the business of a firm which was found to have been indebted to the defendant in the amount of over $1,000, the payment of which was obtained by him from the corporation; the evidence of which fact was derived mainly from entries made in the books of the company, to the admission of which in evidence the defendant objected.

The evidence tended to show that these entries had been unquestioned either by the defendant or any other officer of the company.

*Held,* that the entries made in the due course of business were admissible evidence to prove the transactions recorded when they afterwards became the subject of legal controversy.

*Peck* v. *Valentine* (94 N. Y., 569) distinguished.

That the corporation had no right to pay, nor had the defendant, as its trustee, the right to receive from it, this money in settlement of an indebtedness of the pre-existing firm.

That the moneys so received by the defendant, together with the interest received, upon money advanced by him to the corporation, in excess of the legal rate of interest thereon, were properly recoverable by the receiver from him.

It further appeared that the defendant had become interested in various transactions with the company, designated as "ventures," for purchases made in which defendant advanced the money, and the profits arising from which were equally divided between the company and the defendant.

*Held,* that while the defendant was entitled to a return of his money, together with lawful interest thereon, he had no right to share in the profits of the business which belonged exclusively to the company itself.

The company having become largely indebted to the defendant, on the 20th day of October, 1883, executed and delivered to him, with the consent of a majority of its stockholders, a chattel mortgage by way of security for the payment thereof, covering a large part of the property of the company, which, it was claimed, was unlawful under the provisions of section 4 of 2 Revised Statutes (6th ed.), 399, as a transfer to an officer of the corporation in contemplation of its insolvency.

*Held,* that this section of the statute, having been repealed by section 39 of chapter 402 of the Laws of 1882, and not restored by the repeal of so much of this act of 1882 as related to it, until the enactment of chapter 434 of the Laws of 1884, was not applicable to this mortgage given in October, 1883.

This mortgage delivered on October 20, 1883, was not filed until December thirteenth of that year, and not until after the property mentioned in it had been, to a considerable extent, disposed of, nor was possession of the property taken by the mortgagee at or near the time when the mortgage was given.

*Held,* that the mortgage was invalid for this reason, as against all the creditors of the mortgagor, without regard to the time when their debts were contracted, and that the plaintiff, as receiver, was authorized, by the provisions of chapter 314 of the Laws of 1858, to maintain an action to set aside this mortgage.

Motion by defendant for a new trial, on exceptions taken, under section 1001 of the Code of Civil Procedure, after a trial at the New York Special Term on April 6, 1887.

*Edwin B. Goodell,* for the plaintiff.

*S. Jones,* for the defendant.

Daniels, J.:

The action was brought to charge the defendant, as a trustee of a corporation formed under the laws of this State, for the creation of manufacturing corporations, for the unlawful receipt and appropriation of property received by him in that capacity. The

corporation was formed on or about the 5th of October, 1882, with a capital of $50,000. It was called the Goodwillie Wyman Company, and by its formation it was intended as and was the successor of a copartnership firm, previously engaged in business under the same name. It succeeded to the assets, interests and property, of that firm, and the two persons who were copartners in the firm became stockholders and trustees in the corporation. It continued to carry on the business for which it was incorporated until about the close of the year 1883. A judgment was then recovered against it in favor of a creditor, upon which execution against his property was returned unsatisfied. And upon his application, in an action prosecuted for that purpose, S. A. Briggs, another trustee of the corporation, was appointed receiver of its property. This receiver was afterwards superseded, and the plaintiff was appointed with all the powers and authority incidental under the law, to that position. The defendant was the owner of a small amount of stock in the corporation, and was one of its trustees during the time it was actually engaged in business. The corporation, from its organization, encountered difficulties in meeting and discharging its liabilities, and the defendant, being a man of financial responsibility, was applied to for his aid and assistance. And that was rendered in the advancement of money to and for the corporation, and in the negotiation of its paper, from time to time, while it was engaged in business.

It was alleged, in support of the action, that he had taken advantage of this position to advance his own pecuniary prosperity at the expense of that of the corporation. And this was found to have been sustained by the court in the interlocutory judgment which has been entered, and under which he has been required to account for moneys and property received and disposed of by him as a trustee of the company. The trustees were five in number. Two of them were practically identified with the defendant in the direction and management of the business. These three trustees constituted the majority, and were at all times in a position to dictate as to what should be done in the way of controlling the finances and property of the company.

At the time it was formed the preceding firm was largely indebted. Among other debts it was alleged to owe the defendant upon two

promissory notes of $505 and $507.50, and the payment of these debts was obtained by him from the corporation. The proof upon which these facts were found and incorporated in the judgment was derived mainly from entries made in the books of the company. The defendant objected to the book containing these entries being received as evidence, on the ground that it had not been authenticated in such a manner as to be proof against him. The accounts, so far as they included these items, were kept in the book by the witness, Briggs. And evidence was given upon the trial by the witness, Frederick B. Fiske, from which the court was warranted in finding that Mr. Briggs was acting, in this capacity, as the representative of the defendant. He was asked, " What did Mr. Robinson say, if anything, about who should be the incorporators and trustees? A. He wanted Mr. Briggs to be a trustee and to take charge of the books. Q. Did he say anything about Mr. Briggs representing him? A. In a general way, yes, sir; that Mr. Briggs was in the company, in effect, as his representative. Q. Did he say that? A. Substantially that; yes, sir." And he added further that the defendant said that " whatever was said to Mr. Briggs would be communicated to him, or something like that." He was asked to give the substance of what was said, and answered that what was said to Mr. Briggs would be told to him. Added to this was the evidence of Briggs that he made the entries in the books from memoranda furnished to him by Mr. Fiske. He himself had no knowledge on the subject of the correctness of the entries, but they were made by him in the books from memoranda furnished to him by Mr. Fiske. Mr. Fiske was asked, " So far as you personally furnished Mr. Briggs data to be entered in the books of the corporation, were the entries truthful and correct entries of transactions made by you on behalf of the corporation?" and he answered, " Most certainly." He was further asked, " None of them, to your knowledge, were otherwise? A. Assuredly not."

He was further asked, " Was there ever, to your knowledge, any question made by Mr. Robinson, or any other officer of the company, in regard to the correctness of those entries, or the correctness of the books of the corporation? A. Do you mean these data that I furnished? Q. No, these books here. A. I have no recollection of anybody calling them in question except myself." And

the extent to which he called them in question was the account of the account of the firm in which he had been interested. Other evidence of these witnesses was still more extended upon this subject, proving the facts to have been that Fiske reported to Briggs for entry in the books only such matters as were known to him to be correct. And the evidence of Briggs was that the entries were correctly made, as the information was given to him by the witness Fiske. And entries made in the course of business in this manner have been held to be admissible evidence to prove the transactions recorded, when they afterwards become the subject of legal controversy, (*Mayor, etc.,* v. *Second Avenue R. R. Co.,* 102 N. Y., 572; *Cheever* v. *Lamar,* 19 Hun, 130.) And the admissibility of the books in this manner proved has not been affected by anything contained in *Peck* v. *Valentine* (94 N. Y., 569), for there the decision was confined wholly to objectionable evidence of a lost memorandum. These entries, established in this manner, sustain the conclusion adopted by the court, that these sums of money had been paid to the defendant by the corporation upon the indebtedness of the preceding firm to him ; and no property or funds of that firm are shown to have been placed in the possession of the company out of which it should have made these payments. This was, therefore, within the knowledge of the defendant as a trustee of the company, an appropriation and use of so much of its funds as were applied in payment of these debts, to the satisfaction of demands held by him against the firm; and that neither the corporation itself had the right to make, nor the defendant, as its trustee, the right to receive. His position was one of trust and confidence, which he was legally disabled from using for the promotion of his own advantage. (*Hoyle* v. *Plattsburgh, etc., R. R. Co.,* 54 N. Y., 314.)

It was there said, and the correctness of the statement has not since been denied, that, " whether a director of a corporation is to be called a trustee or not, in a strict sense, there can be no doubt that his character is fiduciary, being intrusted by others with powers which are to be exercised for the common and general interests of the corporation, and not for his own private interests. He falls, therefore, within the great rule by which equity requires that confidence shall not be abused by the party in whom it is reposed, and

which it enforces by imposing a disability, either partial or complete, upon the party intrusted to deal on his own behalf, in respect to any matter involved in such confidence." (Id., 328.) And this rule is further supported by *Blake* v. *Buffalo Creek Railroad Company* (56 N. Y., 485). And that a director or trustee of a corporation is within the principle was also declared in *Butts* v. *Wood* (37 N. Y., 317) and in *Wardell* v. *Railroad Company* (103 U. S., 651). The position of the defendant, as a trustee, was such as to preclude him from using or permitting the use of his power or authority for his own personal benefit. And, to prevent that from being done in this and other analogous cases, the law has subjected guardians, trustees, agents, directors and other officers of corporations to account for all profits made by them by taking advantage of their official position and opportunities. It will not allow these officers to place themselves in the position where there may be a conflict between the duties and obligations which they owe to the corporations and their own personal interests. And for that reason it has been generally declared and maintained that, " all persons who stand in a fiduciary relation to others must account for all the profits made upon moneys in their hands by reason of such relation." And " agents, guardians, directors of corporations, officers of municipal corporations, and all other persons clothed with a fiduciary character, are subject to this rule." (1 Perry on Trusts [2d ed.], § 430.) And this liability is further illustrated by sections 194 and 427, and cases referred to in the notes.

The principle, also, in *Cumberland Coal, etc., Company* v. *Parish* (42 Md., 598) was maintained upon a consideration of the authorities as broadly as it has already been stated. It was there said, with approval, that " it is now well settled that directors and managers of corporations and other companies are equally within the rule which guards and restrains the dealings and transactions between trustee and *cestui que trust* and agent and his principal, such directors or managers being in fact trustees and agents of the bodies represented by them." (Id., 605.) And to the latter effect is *Cumberland Coal and Iron Company* v. *Sherman* (30 Barb., 553); *Stewart* v. *Lehigh Valley Railroad Company* (38 N. J. Law, 505); *Gardner* v. *Butler* (30 N. J. Eq., 702); *Kitchen* v. *St. Louis, etc., Railway Company* (69 Mo., 224); *Chouteau* v. *Allen* (70 id., 290) and *Hubbard* v. *N.*

*Y., etc., Investment Company* (14 Fed. Rep, 679). The payments of these debts to the defendant, with the funds of this company, was a misappropriation of its money. And from his relation and position and general acquaintance with the business, as well as through the employment of Mr. Briggs to keep him posted, it is justly to be inferred that he was well aware of the origin and source from which this money received by him was obtained. And for this misappropriation of so much of the funds of the company, he has been rightly required to account under the judgment which has been entered.

It was further made to appear that, for moneys advanced by the defendant in the course of the business of the company, he received more than the legal rate of interest. As the evidence was given, these occasions were not frequent, however, neither were the amounts large. One occasion was stated particularly in the testimony of Mr. Fiske, which was the only one mentioned by him as being within his recollection. The witness, William Corson, mentioned another, where an excess above the legal rate of interest received was ninety dollars and sixty cents. This excessive interest was not received by the defendant under any agreement for the payment of usury, but it seems to have been taken by him as a bonus for the advances which he had made. And while it is true that a director or trustee of a corporation has not been disabled by the law from loaning money to the company, it is still necessary, for his protection in the transactions, that it shall appear that no undue advantage has been taken by him of his position, or of the authority permitted to be exercised by him over the affairs of the company. Loans made in good faith for the convenience or necessity of the company are sanctioned by what was held in *Twin Lick Oil Company* v. *Marbury* (91 U. S., 587). But there it did not appear that any funds in the way of excessive interest or usury had been received. This part of this case appears to have been quite limited in its amount, but for whatever the defendant did so receive from the company upon advances or loans made by him to the defendant, he has been regularly held accountable by the judgment. No specific amount has been adjudged against him, but that is left to be ascertained, as it very properly may be, upon the accounting ordered to take place.

It was further proved that the defendant had become interested in various transactions with the company which have been described and designated as "ventures." These were purchases made by the company for which the defendant advanced the money. The property purchased went into the possession of the company and was sold by it, and the profits arising out of the transactions were divided equally between the company and the defendant. What he did was to advance his money to enable the company to enter upon and promote these enterprises. The services by which the property was taken in charge, or put into a condition to be sold, were those of the subordinates of the company, and not of the defendant. Various amounts of money are shown to have been paid to the defendant as his share of these profits.

They were clearly secured by him by reason of his position in, and authority over, the affairs of this corporation, and in substance and effect were in the nature of bonuses or premiums paid for the use of his money. Within the rule maintained by the authorities which have already been mentioned, these profits he had no right to exact or receive. While he was entitled to a return of his money out of these various transactions, together with lawful interest upon the amounts advanced, he had no legal right to share in the profits of the business. That was the business exclusively of the company itself, and the profits were wholly payable to it for the benefit of its stockholders and creditors. And so far as they have been received by the defendant, beyond the amounts to which he was entitled by way of interest and principal for the moneys advanced by him, he is liable to account in this action.

On the 20th of October, 1883, the company had become indebted to the defendant for moneys loaned and advanced and for obligations which he had incurred, in the sum of $16,500. And, with the consent of a majority of the stockholders, a chattel mortgage was executed and delivered to him for the security of this sum, upon a large part, if not all, of the property of the company. This mortgage was assailed as unlawful under the provisions of the statute declaring that it should not be lawful to make any transfer or assignment, in contemplation of the insolvency of the company, to any person or persons whatever, and declaring every such transfer and assignment to an officer or stockholder, or other person in trust

for them or their benefit, to be utterly void. (2 R. S., [6th ed.], 399, § 4.) But this section of the statute was not in force at the time when this mortgage was executed, for it had been repealed by section 39, chapter 402 of the Laws of 1882. And it was not again restored, by the repealing of so much of this act as related to it, until the enactment of chapter 434 of the Laws of 1884. It can, therefore, be of no advantage whatever to the plaintiff in this action.

But while this mortgage was made in October, 1883, it was not filed until the thirteenth of the following month of December and after the property mentioned in it had, to a considerable extent, been disposed of. This omission to file the mortgage entitled the plaintiff to avoid it under the provisions of the statute relating to this transaction. Possession of the property was not taken by the mortgagee at or near the time when the mortgage was given, and that subjected it to the presumption that it, in fact, was fraudulent. And the statute further declared the mortgage to be absolutely void against the creditors of the mortgagor, and against subsequent purchasers and mortgagees in good faith, for the failure to file it as that has been provided for by law. (3 R. S. [6th ed.], 143, §§ 5, 9.) The effect of the failure to file a chattel mortgage was examined in *Thompson* v. *Van Vechten* (27 N. Y., 568). And it was then considered by the court in giving effect to another and no more than an equivalent provision of the statute that: "The creditors who may take advantage of the default in refiling, embrace all the creditors of the mortgagor without regard to the time when the debts were contracted." (Id., 583.) And that is strictly the language of the statute itself as to the effect of the omission to file the mortgage at all. *Campbell Printing Press Company* v. *Damon* (48 Hun, 509), follows and gives effect to this language of the statute.

The plaintiff, as receiver, represents not only the creditor in whose suit he has been appointed, but the other creditors of the corporation. And as such, by chapter 314 of the Laws of 1858, he has been empowered to maintain an action to set aside this mortgage. For that purpose it has been declared that he may "treat as void and resist all acts done, transfers and agreements made in fraud of the rights of any creditor." And every person in fraud of the rights of creditors receiving the property or effects of an insolvent corporation has been declared to be liable, in a proper action by a receiver,

for the recovery of such property. And this effect has been accorded to the statute, as it is plainly included within its language, in *Southard* v. *Benner* (72 N. Y., 424), and *Underwood* v. *Sutcliffe* (77 id., 58). For the disposition of this mortgaged property, as far as that has taken place, and for what still remains under the control of the defendant, he appears to have become legally liable, and has rightly been directed to account in the action.

But, where payments have been made to him, by way of refunding moneys loaned by him in good faith, and without the employment of his coercive authority as a trustee of the company, he is entitled to retain the moneys in that manner received. As much as that is sanctioned by *Twin Lick Oil Company* v. *Marbury* (*supra*). Neither is he liable to account for moneys paid to other persons holding obligations or paper of the company, on which he was liable as indorser. For such payments no ground of liability appears to be disclosed by the evidence against the defendant, and in these respects the judgment which has been entered was unauthorized. And so it was in the last paragraph contained in it, directing the recovery of costs by the plaintiff and awarding an additional allowance of five per cent upon the amount to which he should become ultimately entitled. If the plaintiff shall become entitled to costs, that can only be ascertained upon the rendering of final judgment. And the recovery of costs in a case of this description has, therefore, been limited by the Code to that event. (Code Civil Pro., §§ 3228, 3230, 3253.)

Several of the findings of fact and conclusions of law, beyond those which have been considered, have been made the subject of special exception by the defendant. But it is not necessary, materially, to review these exceptions, for the reason that even if some of the findings are broader than the evidence, still, with the modification already suggested, no injury or injustice will result from them to the defendant. And the same observation is applicable to the rulings concerning the admission and rejection of evidence. They have not changed the case in any degree to the prejudice of the defendant. His liability, to the extent already considered, has been sustained by the testimony taken upon the trial. And, while the motion for a new trial should be denied, the judgment should be so far modified as to exclude the provision contained in it

awarding costs and allowances, and modifying the fourth subdivision of the sixth conclusion of law, to such an extent as to exclude from it the direction that the plaintiff shall account for and pay over the moneys received by him in payment of the debts of the corporation in good faith made to him, or in payment of the debts of the corporation to others for which he had become liable, or for property not included in the mortgage, disposed of for the payment of such debts. And, as so modified, the motion should be denied, without costs to either party.

The principles laid down in *Hubbell* v. *Meigs* (50 N. Y., 480) permitted the receipt of the entries in books as evidence.

VAN BRUNT, P. J., and BRADY, J., concurred.

Judgment modified as directed in opinion, and, as so modified, the motion for a new trial denied, without costs to either party.