HENRY R. PIERSON, AS RECEIVER OF THE RESERVE MUTUAL LIFE INSURANCE COMPANY, APPELLANT, v. RICHARD A. McCURDY, RESPONDENT.

*Unlawful purchase of stock by a corporation — the sale cannot be rescinded without restoration being made of what was received under it — wrongful receipt and conversion of corporate property by an officer — when the right of action against him is barred in six years.*

This action was brought by the receiver of the Mutual Protection Life Assurance Society to compel the defendant to account for certain moneys of that company alleged to have been received by him and to recover the same. In 1871 a plan was devised by the officers of the company and the defendant, by which the company was to acquire the assets and stocks of the Widows and Orphans Benefit Life Insurance Company, and reinsure the risks of the latter. The defendant was a trustee and one of the officers of the Widows and Orphans" Company. Thereafter the Mutual Company acquired a majority of the stock of the Widows and Orphans' Company, paying therefor its par value and accrued

interest in gold. At that time the assets of the Widows and Orphans' Company were not equal to their liabilities and capital stock. Some $160,000 of the money of the Mutual Company was paid to the defendant, who paid it all out in the purchase of shares of the Widows and Orphans' Company, which were transferred to the Mutual Company, except about $1,868.61. He retained $3,592.63 for stock owned by himself, which he so transferred. It also appeared that $25,000 of the money of the Mutual Company was paid to the defendant, who retained $15,000 for his services and paid $10,000 to the president of the Widows and Orphans' Company, who lost his place by virtue of the consolidation.

*Held,* that although the purchase of the stock was unlawful, yet as no offer to restore the shares of stock received had been made, and as no such offer could, owing to the change in circumstances, be now made, the purchase could not be rescinded and a claim made for the purchase-money.

That any liability which was imposed upon the defendant by the part he had taken in the various transactions, and by the receipt and misappropriation of the money of the Mutual Company, could be enforced in an action at law.

That such being the case this action was barred by the statute of limitations, because not brought within six years from the time it accrued.

APPEAL from a judgment in favor of the defendant, recovered on a trial at a Special Term.

*W. C. Trull,* for the appellant.

*Robert Sewell* and *John E. Devlin,* for the respondent.

DANIELS, J.:

The object of the action was to obtain an accounting and recovery of certain moneys received by the defendant in October, 1871, which were the property of the Mutual Protection Life Assurance Society. The company was organized and incorporated under the general laws of this State to transact the business of life insurance. It continued to do so under that name until 1872 when its name was changed to the Reserve Mutual Life Insurance Company, under which name it continued business until March, 1877, when the plaintiff was appointed the receiver of its property and effects, the company then being insolvent. The capital of the company was fixed at the sum of $100,000, and its assets in September, 1871, amounted to $335,994.80. Early in October, 1871, a scheme was set on foot by its officers and the defendant in this action, for the acquisition of the assets and stock of the Widows and Orphans' Benefit Life Insurance Company, and for the reinsurance of the risks of that company. The defendant was a trustee and one of the officers

of the Widows and Orphans' Benefit Life Insurance Company, and was the person principally engaged in carrying this purpose into effect. To accomplish it an agreement was made with the president and other officers of the Mutual Protection Company, under which that company agreed to purchase, and afterwards did purchase, the majority of the stock and all the assets of the Widows and Orphans' Company, and reinsured all the risks and assumed the liabilities of this company. By the agreement which was entered into it was intended to acquire all the stock of the Widows and Orphans' Company, and to pay for its purchase its par value and accrued interest in gold, and under the agreement there was afterwards acquired by officers of the Mutual Protection Company a majority of the stock of the Widows and Orphans' Company, for which payment was made as that had been stipulated in the agreement. At the time of this purchase the Widows and Orphans' Company was well established in the life insurance business, and it was to acquire the advantages of that business that the officers of the Mutual Protection Company entered into the agreement which has already been stated. At the time when the agreement was made, and also when it was carried into effect, the Widows and Orphans' Company was the owner of property and assets to the amount and value of $1,599,068.71, and its liabilities upon its outstanding risks and otherwise, and for its capital stock amounting to the sum of $200,000, was the sum of $1,667,975.65. The excess of its liabilities over its assets and property was such as to leave its capital impaired to the extent of $68,906.94, and adding to that its probable liability upon what were called "Tontine risks," amounting to $20,445.40, its capital would be reduced $89,352.34. This was relied upon as an unlawful transaction in the suit brought by the receiver; and as these corporations were limited in the exercise of their authority to the powers conferred upon them by the statutes of the State, that probably was its nature, for it was practically and in effect an amalgamation of two separate and independent corporations into one, the larger being absorbed by the smaller, and that was authorized by no provision contained in any statute relating at that time to corporations of this description. The law did allow one company to reinsure the risks taken by another, but this was not an agreement or arrangement of that character. The pur-

pose and design was not so much to reinsure the risks of the Widows and Orphans' Company as it was to acquire its property and management and afterwards to proceed with the transaction of its business. What was intended to be and was actually accomplished was not the reinsurance of the risks of one company by the other, but it was the bodily acquisition of the company itself and all its property and the agreement to reinsure its risks as an incident only in the transaction, and that was clearly an unauthorized and unlawful proceeding.

In the course of the consummation of the business about the sum of $160,000 was delivered to the defendant by the officers of the Mutual Protection Company, to be used and disbursed by him in the purchase of capital stock of the Widows and Orphans' Company. This money was derived mostly, if not entirely, by means of checks drawn upon the account of the Mutual Protection Company, and that it was obtained from that source must accordingly have been well understood by the defendant at the time when he received the money. This money was held in trust by the Mutual Protection Company to meet its liabilities and protect the parties dealing with it in the course of its life insurance business, and its appropriation to this purpose by its officers, with the concurrence of the defendant, was unwarrantable and unauthorized. The object was not to invest it for the benefit of the Mutual Protection Company, under the authority of chapter 318 of the Laws of 1868, allowing the funds or accumulations of a life insurance company to be invested in any stocks created under the laws of this State, which at the time should be at a market value in the city of New York at or above par, but it was to obtain the control of the affairs of the Widows and Orphans' Company in such manner as to subordinate them entirely to the management of the officers of the Mutual Protection Company and those elected to fill vacancies in the board of trustees of the Widows and Orphans' Company, which it was stipulated should be created, and were afterwards in fact created for that purpose.

The money so received by the defendant, with the exception probably of a balance of $1,868.61, not paid, specially claimed by the receiver, was mostly disbursed and paid out by him in acquiring the title to stock of the Widows and Orphans' Company, which

he afterwards transferred to the officers of the Mutual Protection
Company for its use and benefit. Of these moneys $3,592.63.
were retained by him as the price of thirty-five shares of the
stock owned by himself in the Widows and Orphans' Company;.
but these shares, as well as those otherwise acquired by him,.
were transferred in the manner already stated to the officers of the
Mutual Protection Company, and they were afterwards retained
and apparently used for the benefit of the Mutual Protection.
Company, and continued in that condition until the appointment.
of the receiver. Neither before that time, nor at any time since then,
were the shares offered, or proposed, to be returned to the defend-
ant, or the persons from whom he had obtained them, in carry-
ing out this arrangement. Previous to the time of the transfer
of the shares, other shares in the Widows and Orphans' Company
had been sold in the city of New York at a premium above their
par value, but as a matter of fact that was more than they were
worth, for as the liabilities of the Widows and Orphans' Company
exceeded its assets, and to a very considerable degree would absorb.
its capital, the actual value of the shares was much less than their
par value. If the Tontine liabilities were not to be included in the
liabilities of the company, then the actual value of the stock was
shown to be about sixty dollars a share. If such liabilities were to.
be added, then the value of each share of $100 would be a fraction
over fifty dollars ; and at the time of these transactions it was known
to the officers of the Mutual Protection Company, who were princi-
pally concerned in them, that the capital of the Widows and Orphans'
Company had been impaired to the extent of about $60,000, while the
defendant himself testified that it was known to him to be impaired
to the extent of about double that amount. In that, however, the
evidence tended very decidedly to prove that he was mistaken,.
and that the actual deficiency in the capital by reason of liabilities
was the amount which has already been mentioned. It was stated in
the course of the evidence that this increase in the liabilities of the
company was occasioned by distributing or dividing its earnings
among its policy-holders by crediting proportionate parts of it to
them in their accounts upon the books of the company, and that the
deficiency could be corrected or removed by withdrawing these
credits. But as the credits had in fact been made and were at no.

·time withdrawn, but were assumed to have been proper in the transactions of these parties, the power previously to expunge them in that manner would not change the liabilities of the company. If that had been done, then there would be reason for excluding these credits from consideration, but it was not and they were left to remain upon the books without any change being made as distributions of so much of the accumulations or earnings of the company, and in that manner contributed to produce this deduction in the capital which was shown to exist by the evidence. But it is not probably very important to determine whether these credits formed irrevocable liabilities on the part of the company or not. If they did, and they had been canceled, then the stock of the company would·be of a correspondingly greater value than it was. But without that change its actual value was shown to have varied from fifty dollars to sixty dollars for each share of $100, and that rendered the acquisition of the stock so far valuable to the Mutual Protection Company to whose officers it was transferred evidently for its uses, and as no offer was ·at any time made to return the stock, neither the company nor the receiver himself could rescind this purchase and recover from the defendant the purchase-price. For· even though the transaction may have been an unauthorized and unlawful one, for the reason that it was not within the power of the Mutual Protection Company to acquire the stock in this manner, it could not be disaffirmed and the money recovered without either returning or offering to return this stock. (*Woodruff* v. *Erie R. R. Co.*, 93 N. Y., 609.)

To rescind an unauthorized purchase of this description or one that may have been fraudulently induced, the law requires that the party entitled to disaffirm it shall surrender up and return to the other what was received·in the process or consummation of their dealings. It will not permit a party who may have been imposed upon or illegally induced to purchase another's property to retain it, and still recover back the consideration which was paid for it. This is a very general principle applicable to the right of one party to disaffirm or rescind a transaction into which he may have been drawn by the misconduct of another; and where, after discovering the cause of his complaint, he shall fail to return, or offer to return, what he himself may have received, the law will not permit him to

recover back the consideration which he may have parted with in the transaction. (*Hammond* v. *Pennock*, 61 N. Y., 145; *Gould* v. *Cayuga Co. Natl. Bank*, 86 id., 75, 79, 80.)

Exceptions exist to this rule where the wrong-doer himself may by his own conduct have disabled the other party dealing with him from fully restoring what he may have obtained, or where the judgment itself in the action secures to the wrong-doer complete relief and full protection, or where the securities which have been received are at the time entirely worthless. (*Allerton* v. *Allerton* 50 N. Y., 670.) But this case is not included within either of these exceptions, for by no act of the defendant did he disable or prevent the Mutual Protection Company or its officers from returning this stock. Neither can the advantage which the defendant might have derived from it, if it had been within a reasonable time returned to him, be measured by anything included in the plaintiff's case, nor was the stock without substantial value. What the law required, therefore, if the transaction was to be annulled, was the return of these shares to the defendant, and that was neither proposed nor attempted. Chapter 314 of the Laws of 1858, under the authority of which the receiver brought this action, does not relieve him from the necessity of observing this general rule of law governing this class of cases. It simply removed the preceding disability under which executors, administrators, receivers, assignees and trustees of estates were precluded from questioning the disposition previously made by the persons or bodies, whose property should be committed to their charge and management, and invested them with the power to disaffirm fraudulent or unlawful transactions, which they otherwise would not have been able to do. They were in no manner by any of its provisions relieved from the obligations to comply with well settled legal principles otherwise affecting the subject matter of the controversy, and consequently where it should be intended to disaffirm or annul the fraudulent or unlawful disposition of the debtor's property or estate, it could only be effectually done by complying with and observing the other rules of law applicable to the disposition of such a case. That is what the receiver did not propose to do in this action, and he was not in a position in which he could do it, for as the Mutual Protection Company had at the time of his appointment become insolvent, and the stock of the Widows and Orphans' Com-

pany was then practically worthless, he could not return what had been received for the benefit of the Mutual Protection Company at the time when the money was delivered to the defendant. He was not in a condition to rescind the transaction, but if he had been and had done so his right to relief would still be only a right to recover the money which had been received by the defendant, and that could have been as successfully secured in an action at law as in an action in equity (*Masson* v. *Bovet*, 1 Denio, 69,) and consequently he was limited in this ground of complaint to what was in substance a claim of damages for the unlawful appropriation of the money of the company for which he was appointed receiver.

The fact that this money was impressed with a trust in favor of the creditors and stockholders of the Mutual Protection Company will not aid the plaintiff in maintaining this action in the form in which it was designed to maintain it by the complaint. For while it is true it was in the charge and under the control of the officers of the Mutual Protection Company as a trust fund, and they were personally bound to protect and maintain it as such, and violated the obligations of their trust in transferring it, as they did, to the defendant; as it did not remain in his hands but was disbursed, as it was agreed and intended it should be, with the exception of a small portion of it, the receiver did not establish his right on this ground to recover the trust fund from the defendant. It is to be assumed that in parting with the money the officers of the Mutual Protection Company violated the obligations of their trust and became liable for damages occasioned to the company by their misconduct. (Angell & Ames, on Corp. [10th ed.], § 312; *Blake* v. *Buffalo Creek R. R. Co.*, 56 N. Y., 485; *Barnes* v. *Brown*, 80 id., 527; *Jackson* v. *Ludeling*, 21 Wall., 616.) And the defendant being himself aware of this misappropriation and unlawful use of the money would be equally liable. But as the fund with the exception of a comparatively small amount had been made use of by him in the manner in which it was provided and intended it should be used, and had mainly passed into other hands, an action for the return of the identical money as trust money could not be maintained. Neither could it be for the amount retained by him as the purchase-price of his own stock, without the return to him of the stock in the condition in which it was

when the transaction became known to the stockholders and other officers of the company, and no such return was at any time proposed or offered to be made. As to him, as the facts were proven, the right of the Mutual Protection Company or its receiver was to recover damages for the extent to which it had been injured in its affairs and property by this unlawful disposition of its moneys, and that redress would be fully and properly obtained by what is known as a legal action. As to the balance remaining in his hands unexpended, that also was substantially money held by him for the use of the Mutual Protection Company and could be recovered in an appropriate action for that purpose; for neither was the intervention of a court of equity exclusively required. But, whatever authority it had was concurrent with this court as a court of law.

It was also alleged as a ground of the action, and proof was given tending to establish the truth of the allegation, that an unlawful confederation or conspiracy was formed by the defendant and the officers of the Mutual Protection Company, who were parties to the business, to defraud it out of these moneys. But if that view should be taken, and the action held so far capable of being maintained, it would still be an action for the recovery of so much money or for damages sustained by the company by reason of the consummation of the unlawful confederacy. (*Place* v. *Minster*, 65 N. Y., 89, 95.) And neither of these grounds of liability will be of any practical benefit to the plaintiff, for as he cannot maintain an exclusively equitable action for the rescission of the transactions, by reason of the position in which he has been placed by the facts already mentioned, then surely as his action was not commenced until April, 1879, as will be more fully considered hereafter, the statute of limitations has deprived him of this remedy.

In the early part of the progress of the business in which the defendant was engaged he received the further sum of $25,000 from Freeman, who was an officer of the Mutual Protection Company, co-operating with him in the acquisition of the property, effects and stock of the Widows and Orphans' Company. This money is stated to have been claimed by Freeman, who delivered him the check for it, to have been his own money, but that it evidently was not, and the fact was so stated by the witness Morgan, who at the time was president of the Mutual Protection Company; and as it was paid to

the defendant by the check of that company, which was indorsed to him, he had very good reason for knowing that it was in fact the money of the company. This money was not used by him in purchasing stock or any other commodity for the Mutual Protection Company, but it was, as he said, delivered to him to pay him for his services in conducting this business. Of that $15,000 was so retained by him, and the remaining $10,000 was paid to Raymond, who was the president of the Widows and Orphans' Company, but displaced and removed from his office by means of this transaction. It is not necessary, in terms, to characterize this disposition of the money of the Mutual Protection Company. Its consideration and object are entirely obvious, and the result derived was that which was expected to be accomplished by the parties. But while this was a misappropriation of so much of the money of the Mutual Protection Company, and was probably so understood by the defendant, and consequently received by him, impressed with the trusts to which it had been subjected as the money of the company, still the lapse of time between its receipt and the commencement of the suit seems to be an insuperable obstacle in the way of the plaintiff's right to recover it. As to this money and the balance of the residue of that paid to the defendant remaining in his hands, and also the other and larger sum, no equitable action to enforce the trust impressed upon it was absolutely required by the law. The action, when brought, could not be for the maintenance and administration of the trust, but in either case only for the recovery of so much money still in the hands of the defendant, or for damages for that which he had converted to another purpose or which he was not entitled to withhold from the Mutual Protection Company, or its receiver, or an action for the recovery of these sums under the facts as they were presented by the evidence, if a legal rescission of the purchase of the stock had taken place, as so much money received by the defendant to and for the use of this company. An equitable action was not strictly required for either purpose, for what has been known as an action for money had and received, or for the conversion of property lawfully belonging to another, could be maintained and would be sufficient to redress the wrongs set forth. This subject was partially considered in the early case of *Neilson* v. *Blight* (1 Johns. Cases, 205), where upon the assumption of a promise,

although none was in fact made, an action at law for money held in this manner was maintained, and *Weston* v. *Barker* (12 Johns., 276), *McCrea* v. *Purmort* (16 Wend., 460, 465), *Dias* v. *Bruneli* (24 id., 9) and *New York Insurance Company* v. *Roulet* (Id., 505), maintain the same proposition, and that is that where a sum of money may be in the hands of a party belonging to another, from whom it cannot conscientiously be withheld, an action for money had and received, to recover it, may be sustained. And in *Wetmore* v. *Porter* (92 N. Y., 77) it was further held, that " whoever receives property, knowing that it is the subject of a trust, and has been transferred in violation of the duty or power of the trustee, takes it subject to the right not only of the *cestui qui trust*, but also of the trustee, to reclaim possession of the specific property or to recover damages for its conversion in case it has been converted." (Id., 81.) These authorities abundantly sustain the point that ample redress may be obtained for the wrongful withholding or conversion of trust moneys by a person occupying the relation to them which the defendant did, in an action brought for their recovery or for their conversion, and they consequently subject the claims for the recovery of the money or other redress to the provisions of the statute prescribing the time within which such an action must be commenced.

It has been urged as the money in controversy was the subject of a corporate trust that the statute of limitations is not applicable to the action, and a position analogous to this was sustained under circumstances in their legal effect quite similar to those presented in this action, in the case of *Ernest* v. *Croysdill* (2 De Gex, Fisher & Jones, 175.) But the exposition of the law made in that authority is not now entitled to be followed. It is true it has generally been stated to be the law governing the time within which an action may be commenced for the recovery of moneys received by collusion from a trustee, or with express notice of the trust in 2 Perry on Trusts (§ 840). But while this rule is entirely applicable to actions against the trustee himself, brought during the continuance or subsisting of the trust, it is not applicable to, neither does it control the case of a party receiving and appropriating to his own use or otherwise disposing of trust moneys. There the party is subjected, by the operation of well established legal princi-

ples, to the obligation only of refunding or returning the money
burdened with the trust. ' And in that class of cases the time within
which an action may be maintained has been regulated in this State
by the statute of limitations, which will begin to run from the actual
miappropriation of the funds, or at farthest from the discovery of
the fact, by the use of reasonable diligence by the party entitled to its
benefit. Upon this subject it has been stated to be the law, that it
is indeed perfectly clear that when a person takes possession of
property in his own name, and is afterward by matter of evidence,
or by construction of law, changed into a 'trustee, lapse of time may
be pleaded in bar. (Angel on Limitations [3d ed], §§ 178 and 471;
Hill on Trustees [3d Am. ed.], 388, p. 3; *Hawley* v. *Cramer*, 4 Cow.,
718; *Wisner* v. *Barnet*, 4 Wash., 631 and 640; *Walker* v. *Walker*,
16 Sergt. & Rawle, 379; *Kane* v. *Bloodgood*, 7 Johns. Ch., 90.) In
the latter case the rule has been said to be that when there is a
subsisting or continuing trust acknowledged and acted upon by the
parties, the statute does not apply, but as to those other trusts
which are the ground of an action at law, the statute is, and
in reason ought to be, as much a defense in one court as in the
other." (Id., 114.) Where there is a legal and equitable remedy
in respect to the same subject-matter, the latter is under the
control of the same statute bar with the former. (Id., 118.)
The case of *Ernest* v. *Croysdill* (*supra*) was decided before the
enactment of chapter 69 (36, 37 Vict.) in 1873, which followed
this rule and only excepted the claim of a *cestui que trust* against his
trustee for property held on an express trust, or for any breach of
trust, from the statute of limitation, and chapter 27 of 3 and 4
William IV, section 25, does not seem to have been considered in
its decision, for it carried the rule of exemption further than had
been provided for even by that statute. The error, however, which
may have intervened in this decision, was afterwards fully corrected
by the controlling principal of *Knox* v. *Gye* (5 L. R., H. L. English
and Irish Appeals, 656), where it was generally held that the same
limit would be imposed upon an action in equity which had been
prescribed for the commencement of an action at law by the statute
of limitations where redress could be obtained in that form. And
it was also held in *Harston* v. *Tenison* (20 L. R, Ch. Div. 109),
that lapse of time would bar an action brought by a *cestui que*

*trust* against a stranger, although it would not against the trustee himself. The prevailing tenor and effect of these authorities is to subject an action of this description to the direct operation of the statute of limitations; and this was the evident design and intention of the enactment of the provisions contained in the Code of Procedure, which are applicable to this case, for as the right of action accrued before the Code of Civil Procedure went into effect, and the suit itself was commenced in April, 1877, less than two years after that time, by subdivision 3 of section 414 its disposition in this respect is subjected to the government and control of the preceding law. That was enacted in such terms as to include civil actions generally without distinguishing between those previously known as legal or equitable, and by the provisions contained in the Code it was designed to prescribe the time within which all such actions might be commenced. By section 97 of the Code of Procedure an action for relief not before therein provided for might be commenced within ten years after the cause of action had accrued. But this section was not intended to include an action of the nature of that brought by this receiver, for it was an action which had been provided for by preceding sections of that Code, and therefore by its terms not within section 97. It was to enforce an obligation or liability implied from the facts disclosed by the evidence, and required to be commenced within six years after the right to commence it had arisen by subdivision 1 of section 91. Certainly, if the suit in form had been brought to recover the balance of money remaining in the defendant's hands, and the $25,000 delivered to him as he stated to compensate him for the services which were to be performed or for the damages sustained by the misappropriation of the other moneys delivered to him, it would beyond dispute have been within this subdivision of section 91. And that it might have been brought in that form is clearly sustained by the authorities which have already been referred to; and as it then would have been within this subdivision it was an action previously provided for within the phraseology of section 97, and by merely changing its form from such an action to one for specific relief, by way of an accounting predicated upon the receipt of these trust moneys, would not so far change its nature or effect as to exclude it from the operation of this provision. It would be entirely unrea-

sonable to hold that upon the same state of facts the plaintiff would be limited in one form of action to the period of six years, and in another form allowed the period of ten years, within which the action could be commenced. And the law contains nothing which would justify such a distinction. In this respect it is substantially the same in its effect as were the provisions contained in the Revised Statutes, which while they provided that bills for relief in case of the existence of a trust not cognizable by the courts of common law, and in all other cases not therein provided for, might be filed within ten years after the cause thereof should accrue, still declared that whenever there was a concurrent jurisdiction in courts of common law and in courts of equity of any cause of action, the provisions limiting the time for the commencement of a suit for such cause of action in a court of common law, should apply to all suits brought for the same cause in the Court of Chancery. (2 R. S., 301, §§ 52, 49.) The section last referred to in express terms applied to the limitation of actions over which concurrent jurisdiction existed in courts of law and equity, the same legal principle which has been shown to have been finally maintained by the courts themselves; and that was to render the time uniform in all tribunals in which actions for the same cause might be commenced and prosecuted. It was not necessary in terms to continue this section in the Code of Procedure for its provisions were so framed as to include all actions alike, and they prescribed uniform rules declaratory of the times in which they might be commenced, and excepted only from those rules the classes of cases not in terms provided for, or including them, and as they were so framed as to include these claims and limit an action for their recovery to the period of six years, and this action was not commenced within that time, the answer setting up the statute they presented a complete defense to the suit.

Subdivision 6, of section 91, did not include this action for the reason that it was not for a cause of action, previous to that enactment solely cognizable by the Court of Chancery. It was, on the contrary, an action over which concurrent jurisdiction existed in courts of law and equity, and for that reason was excluded from that subdivision of this section. A similar subject was considered in *Foot* v. *Farrington* (41 N. Y., 164), where this provision was held to be inapplicable when the right to redress would

be fully protected by an action at law. This decision seems to have led to a change in the subdivision when to a certain extent it was re-enacted and made a part of the Code of Civil Procedure. But it has been there so limited as it was then framed as not to include an action of this description, for its terms have been restrained to an action to procure a judgment other than for a sum of money. (Code Civil Pro., § 382, subd. 5.) And that restraint would prevent it from including this suit, which has been brought, so far as these claims are concerned, and it could be sustained if at all, solely for the recovery of sums of money.

But if subdivision 6 of section 91 of the Code of Procedure would include the case, it would not advance the plaintiff's right of recovery, for the transaction through which the Mutual Protection Company practically absorbed the Widows and Orphans' Company was neither concealed nor obscured. An early part of the proceeding was enjoined to be regarded as confidential, but after it had been consummated no such restraint as that was imposed upon it, but it was known and understood and regarded as an advantage obtained by the Mutual Protection Company. That was made to appear not only by the evidence of the witness Mason, who had been a clerk in the employment of the company, but also by that of the witness Morgan, who was its president. If any desire had existed on the part of any person interested in either of the companies to ascertain all the details connected with this business, no difficulty whatever appears to have stood in the way of their discovery, and in that state of the evidence the case certainly could not be regarded as being brought within the language of this subdivision of section 91. In the object to be obtained it differed entirely from that of *Salisbury* v. *Morss* (7 Lans., 359 and 368). That was for equitable relief which could not be obtained by means of a mere action for the recovery of the debt, while in this case the sole object of the action was to recover equivalent sums of money for those received by the defendant, and whether such an action be brought in the form heretofore known as an action at law, or an action in equity, the rule of limitation prescribed by the law is the same, and that is the period of six years after the time when the right to institute the action has arisen.

The evidence disclosed no right to recover so much of the money

as had been paid for the stock transferred for its benefit to the officers of the Mutual Protection Company. And as the claim for that and the residue of that money remaining unexpended, and also for the balance which may have remained in the defendant's hands of the $25,000 received by him, and applied in part by way of compensation for his services, and the residue of which was paid to the deposed president of the Widows and Orphans' Company, were barred by the statute of limitations, this action could not be maintained. It cannot be necessary to consider the objections that were taken to evidence received and excluded during the progress of the trial. If these rulings had been different the plaintiff's right to recover could in no possible view have been maintained by them. The defects in his case were wholly unsurmountable as the facts existed at the time when the suit was commenced. It was rightly disposed of at the trial, and the judgment from which the appeal has been taken should therefore be affirmed.

DAVIS, P. J., and BRADY, J., concurred in the result.

Judgment affirmed.